Otis H. SMITH

v.

**DALE HART, INC., Placid Oil Company, J. Ray McDermott & Company, Inc. and Marine Taxis, Inc.**

Civ. A. No. 12109.

United States District Court,
W. D. Louisiana,
Lafayette Division.

May 21, 1970.

Darden, Screen & Trice, Phil Trice, New Orleans, La., for plaintiff.

Plauche & Plauche, A. Lane Plauche, Lake Charles, La., for Dale Hart.

Breazeale, Sachse & Wilson, Boris F. Navratil, Baton Rouge, La., for Placid Oil.

Terriberry, Rault, Carroll, Yancey & Farrell, James L. Schupp, Jr., New Orleans, La., for Marine Taxis, Inc. and J. Ray McDermott & Co., Inc.

## MEMORANDUM OPINION

PUTNAM, District Judge.

Plaintiff, Otis H. Smith, brought this suit under the Jones Act and the General Maritime Law for unseaworthiness and for maintenance and cure, as the result of an accident which he sustained on March 10, 1966, while working aboard a vessel known as the M/V HELEN L. II (Helen L.). Defendants are Dale Hart, Inc. (Hart), his nominal employer, Placid Oil Company (Placid), J. Ray McDermott & Company, Inc. (McDermott), and Marine Taxis, Inc. (Marine). The relationship of each of these last named corporate defendants to plaintiff will appear from the discussion following.

Plaintiff's claims under the Jones Act and for unseaworthiness were submitted to the jury on special verdicts pursuant to Rule 49(a), 28 U.S.C.A., F.R.C.P. By express agreement of the parties dictated into the record, the claim for maintenance and cure was reserved for decision by the Court alone, to be decided on the basis of the evidence heard by the jury in support of the remaining claims.

Defendant Hart is a service contractor engaged in the business of rendering services to oil companies operating in Louisiana, and procuring labor for them to work on platforms, vessels and other structures in these operations, on land and offshore. Plaintiff has worked for Hart for some time, and was, at the time of his injury, carried on Hart's payroll and paid by him. While his employment at times has been directly for Hart in performing contract work for these oil companies, under Hart's direction and control as an independent contractor, on the date in question and for several weeks prior thereto Placid stood in the proximate relation of employer to him, exercising complete control and direction over his work and his daily assignments down to the most minute detail. His employment came about when Placid called Hart for a crew of men to work in its Block 77 area. Smith was sent as pusher of a crew of men, with instructions to report aboard the "Helen L." and proceed to the area. He was taken to Placid's supervisor on the largest or main platform, where they were furnished living quarters and meals.

The "Helen L." was a workboat, owned by Marine and manned by two of its employees, a skipper and a deckhand. Marine furnished this vessel and its crew to McDermott, which in turn contracted the boat and crew to Placid. We regard these transactions as time charters of the "Helen L.". They were not reduced to writing, but the vessel remained under the control of Captain Shy. She tied up at the Placid platform each day except in extremely rough weather.

The vessel was fifty-four feet long, with a twelve-foot beam and four-foot draft, capable of a speed of twenty-three knots. She was licensed and documented. At the time in question Shy operated the boat as required by Placid, ferrying men, supplies and material to and from the platform and McDermott's dock. The work of loading and unloading supplies was done by Smith and his "crew" at the dock and at the platform when they were working. These were part of Smith's duties, but, more important, he was required to board the vessel each day on a regular basis, load working tools and equipment thereon, and with another of Placid's regular employees, would travel from the main platform to some six or seven smaller well structures in the surrounding area, where individual producing wells were located. He spent the greater part of his time at this task.

At the time of year Smith was employed, he and the men with him were chiefly engaged in pumping chemicals to prevent freezing from the "Helen L." into supply tanks located on the well platforms. A hand pump, also located on the vessel, was employed for this purpose, which plaintiff operated, pumping from barrels on the vessel up to the platform tanks when necessary. Smith would board the well platform with the Placid employee to perform work on the well structures in connection with the pumping operation, or anything else that was required to be done to keep production flowing. At times they handled lines securing the "Helen L." to the platforms and to the McDermott dock when going on or off shift.

It was while transferring from the vessel to one of the well platforms that Smith felt a catch in his back. He suffered pain that night and was sent in the next day where he was treated for a condition finally diagnosed as a degenerative disc condition of the spine resulting in narrowing of the intervertebral disc spaces, aggravated by the incident of March 10. Dr. Comeaux, Smith's regular doctor, a general surgeon of Lafayette, observed objective symptoms of injury at the time of his first ex-

amination, consisting principally of muscle spasm in the lumbosacral area, with subjective complaints of pain in the low back, radiating into both legs. He would not recommend an operation. On the other hand, Dr. Bordelon, an orthopedist of Opelousas, concurred in Dr. Comeaux's findings but recommended a laminectomy or possibly a spinal fusion. In Dr. Bordelon's opinion, this operative procedure would not restore Smith to a condition permitting the resumption of work, but it would, if successful, alleviate the suffering plaintiff has constantly experienced since the injury and make him more comfortable. In time, Dr. Bordelon thought that he might be relieved of wearing the corset he has worn to date. There is, of course, no guarantee of success.

The jury found that Smith was a member of the crew of the "Helen L.", that none of the defendants were negligent under all of the facts and circumstances of the case, and that the "Helen L." was not unseaworthy in any respect.

Considering the work plaintiff performed on a regular basis aboard the "Helen L.", and the fact that he was aboard this service boat to assist and did assist in her welfare and function while in navigable waters, and also to aid in the performance of her function and special purpose, the servicing of Placid's Block 77 operations and the transportation and injection of chemicals from well to well to prevent freezing, we conclude as did the jury, that he enjoyed seaman's status as a member of her crew. Offshore Co. v. Robinson, 5 Cir. 1959, 266 F.2d 769; Producer's Drilling Co. v. Gray, 5 Cir. 1966, 361 F.2d 432; Marine Drilling Co. v. Autin, 5 Cir. 1966, 363 F.2d 579. Compare: Stanley v. Guy Scroggins Const. Co., 5 Cir. 1961, 297 F.2d 374, and Texas Co. v. Savoie, 5 Cir. 1957, 240 F.2d 674, reh. den. 242 F.2d 667.

The jury also found no negligence on the part of any of the defendants, and that the "Helen L." was not unseaworthy, these findings being based upon the facts established by a preponderance of the evidence in the case as viewed by it under the instructions given by the Court. Considering all of the facts and circumstances surrounding plaintiff's employment and the work in which he was engaged at the time of the accident, we cannot say that these findings are without reasonable basis in the evidence before the jury. They are adopted by us as our own.

Since plaintiff's motions for judgment n. o. v. and for a new trial were denied without written reasons, we will elaborate upon them briefly at this time. That plaintiff's occupation was dangerous is undisputed. The requirements of Placid's operations made it necessary to send the "Helen L." on its rounds of the well platforms every day, even when weather conditions were considerably less than ideal. These facts alone do not constitute negligence, nor do they render the vessel or its appurtenances unseaworthy. We believe it to be now settled that negligence and unseaworthiness are entirely different concepts and must be judged by different criteria. On this point, see this court's opinion in Hanks v. California Company, W.D.La.1967, 280 F.Supp. 730, at pages 738, 739, and authorities there cited. As to unseaworthiness in this case, the aggravation of plaintiff's back condition was not due to any condition of the vessel or its appurtenances, or the manner in which its crew performed their functions in her handling under the circumstances, such as to render her not reasonably fit for her intended service. Plaintiff's back gave way because on the day in question the degenerative disc condition from which he suffered was aggravated by the injury received to the point where it reached the "end of the line" over a lifetime of hard and rigorous use.

But this finding does not preclude plaintiff's right to maintenance and cure, since he was a member of the crew or a seaman in the service of the vessel at the time of the onset of his present disability. The Osceola, 1903,

189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. Moreover, his entitlement to the benefits thus afforded continues from the time of injury until such time as he reaches maximum cure or is beyond reasonable prospect of improvement in view of contemporaneous medical knowledge. Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Murphy v. Light, 5 Cir. 1958, 257 F.2d 323; Gilmore & Black, The Law of Admiralty, pp. 253–262; Norris, Law of Seamen, 2nd Ed. Vol. 1, Secs. 561, 562, 563 and cases there cited.

■ The evidence in this case establishes beyond question that Smith has been completely disabled since March 10, 1966. He has not been able to do any work of consequence and is in continuous pain or discomfort. No cure was provided or even offered to him by any defendant in this case. Dr. Bordelon, whose opinion we accept as more authoritative than that of Dr. Comeaux, he being a specialist in the field of orthopedic surgery, is of the belief that an operation would be helpful to plaintiff in relieving this pain and discomfort. Under these circumstances, we conclude that maximum cure has not been reached. Our opinion is that maximum cure does not depend upon ability to return to work, but it is only reached when, through the application of modern "methods of rehabilitation under medical supervision, the seaman is returned, as near as may be, to the status of a functional human being." Scott v. Lykes Bros. Steamship Co., E.D.La.1957, 152 F.Supp. 104.

■ Plaintiff stated during the trial of this case that he would undergo an operation by Dr. Bordelon to restore him to this status. He is and has been prevented from doing this by his lack of funds. We cannot enter an award for future maintenance in a lump sum, but we can and will make an award for all past maintenance due plaintiff at the rate of $8.00 per day (the amount stipulated by the parties in this case), and for all amounts expended by him in the past for cure. Calmar S.S. Corp. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 83 L.Ed. 993; Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88, reh. den. 370 U.S. 965, 82 S.Ct. 1578, 8 L.Ed.2d 834. Moreover, under these circumstances, we will order that such payments continue until maximum cure has been reached as set forth above.

■■ This brings us to the question of which defendant owes maintenance and cure. We agree with the summary of the jurisprudence as set out by Judge Ellis in Sims v. Marine Catering Service, Inc., E.D.La.1963, 217 F.Supp. 511, that the obligation to pay maintenance and cure is owed by the person or entity standing in the relation of employer to the injured seaman. In the present case, however, the matter is complicated by the circumstances surrounding Smith's employment by Placid. It was originally agreed by Placid in the first pretrial stipulation filed that plaintiff was its "borrowed employee". This stipulation was subsequently withdrawn with the Court's permission. At the trial, however, it was agreed that complete control over Smith's activities was vested in Placid. This stipulation is filed in the record. On this basis the Court ruled as a matter of law that Placid was plaintiff's employer for purposes of the suit under the Jones Act, as it stood in the proximate relation of employer to him. This opinion has been previously expressed by the Court with copious citation to the case law relied upon in Hebert v. California Oil Co., W.D.La.1967, 280 F.Supp. 754, pp. 760, 761, and we will not belabor the point at this time.[1]

1. In Hanks v. California Co, supra, and in Hebert v. California Oil Co., supra, the employee pro hac vice performed work necessary to an operational activity of the vessel through a contract between the *owner* and *operator* of the ship and his nominal employer. In the present case Placid was time charterer of the Helen L. II. Control over the shipboard employment of Smith, however, vested entirely in Placid through its supervisors, together with other aspects

The evidence also established and we make the finding that Hart did not provide insurance coverage in behalf of Placid for Smith's work with that defendant, and that it effectively ceased to act as his employer during the continuance of the work except for paying his wages. We further find that the relationship was consensual in that both Smith and Placid agreed to the arrangement. Our conclusion in this regard is, therefore, that Placid owed the duty of providing maintenance and cure in the present case.

 Vaughan v. Atkinson, supra, established that there is an affirmative duty upon the shipowner to investigate the claim for maintenance and cure with reasonable diligence and to provide relief when due. This case further held that where this duty is neglected in such a manner as to amount to recalcitrance and indifference to the plight of the employee-seaman, attorney's fees will be allowed him as compensatory damages in a successful suit for recovery of the amounts so owed. The lower courts have understandably split as to the effect of this decision, the cases being marshalled and discussed in Roberts v. S.S. Argentina, 2 Cir. 1966, 359 F.2d 430, and in Roberson v. S.S. American Builder, E.D. Va.1967, 265 F.Supp. 794. The majority view expressed above has been strengthened by the reference to *Vaughan* made by the Court in Fleischmann Distilling Corp. v. Maier Brewing Co., 1967, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475, when, in discussing the so-called American rule as to attorney's fees, which is to the effect that they are not ordinarily recoverable, it is said:

"*In appropriate circumstances,* we have held an admiralty plaintiff may be

awarded counsel fees as an item of compensatory damages (not as a separate cost to be taxed). Vaughan v. Atkinson, * * *." (Emphasis supplied.)

The majority view has been followed by other courts in this district and by this court, and we apply it here.

In the present case the defendant refused to pay maintenance and cure after repeated demands upon it by plaintiff through his counsel. However, the refusal was not the result of any neglect or indifference on the part of defendant. It was based upon a denial of Smith's status as a seaman, further complicated by the circumstances surrounding his employment. The latter considerations, considered in the light of Placid's admissions of fact at the trial, were, in our opinion at least, ill-founded and without support in the law. The status question was bona fide and serious; defendant was not required to admit plaintiff's status as a seaman and pay him maintenance and cure to discharge the onus imposed by Vaughan, supra, but was entitled to litigate the question before a jury. The authorities on this point are legion and do not require citation.

For the foregoing reasons, judgment will be entered in this case in favor of plaintiff and against the defendant Placid for maintenance at the rate of $8.00 per day from March 10, 1966, and for all expenses actually paid by plaintiff for his cure arising out of the accidental injury sustained by him on that date, up to the date of this decree and for such additional period as may be required for him to attain maximum cure as above set forth.

determinative of the employer relationship vis-a-vis Placid and Smith. The result is the same: Placid employed him

primarily to perform seaman's work aboard a vessel subject to all of its hazards.