Donnie E. SPINKS, Plaintiff-Appellant-Cross Appellee,

v.

CHEVRON OIL COMPANY and Barge Facilities, Inc., Defendants-Third-Party Plaintiffs-Appellees-Cross Appellants,

LABOR SERVICES, INC., et al., Third-Party Defendants-Appellees-Cross Appellants.

Donnie E. SPINKS, Plaintiff-Appellant,

v.

LABOR SERVICES, INC., Defendant-Appellee (two cases).

No. 73–3618.

United States Court of Appeals, Fifth Circuit.

Jan. 27, 1975.
Rehearing Denied March 10, 1975.

Philip E. Henderson, Houma, La., for Spinks.

Lloyd C. Melancon, New Orleans, La., for Chevron Oil Co.

Tom F. Phillips, John R. Tharp, Baton Rouge, La., for Labor Services et al.

James H. Drury, New Orleans, La., for Surplus Lines Ins.

T. C. W. Ellis, New Orleans, La., for Steamship Mutual, etc.

Donald M. Pierce, Donald V. Organ, New Orleans, La., for Seguros America Banamex.

Lawrence D. Wiedemann, New Orleans, La., for Welch Sales & Service.

Before RIVES, WISDOM and COLEMAN, Circuit Judges.

WISDOM, Circuit Judge:

Donnie E. Spinks, plaintiff-appellant, employed by Labor Services, Inc., was injured while performing work for Chevron Oil Company on one of Chevron's drilling barges in the Gulf of Mexico. The accident generated three suits by Spinks and multitudinous pleadings, including third party demands, counterclaims and cross-claims for indemnity and attorney's fees.[1] The suits were

1. In the interest of brevity, we have simplified our discussion of the pleadings.

consolidated for trial and on appeal. The principal issue is whether the district court erred in denying relief to Spinks; the court found that Spinks' "negligence was the sole proximate cause of the accident." Another issue is whether, although Spinks was a borrowed servant of Chevron, he remained, for purposes of the Jones Act, an employee of Labor Services, his original employer. We reverse in part and remand.

In Civil Action No. 70–251 Spinks sued Chevron for damages under the general maritime law alleging that he was injured as a result of the Chevron's negligence and the unseaworthiness of its jack-up drilling barge, the S–66. Chevron filed a third party complaint against Labor Services claiming indemnity and attorney's fees, under the terms of a contract obligating Labor Services to defend Chevron in any suit brought against it by any of Labor Services' employees.[2] Labor Services counterclaimed against Chevron for indemnity or contribution, should Labor Services be cast in judgment. It also demanded that Chevron indemnify it for medical expenses and maintenance paid by Labor Services as a result of plaintiff's injury. The counter-claim rests on the theory that Spinks was the borrowed employee of Chevron. The district court granted judgment for Chevron on the merits.

In No. 70–252 Spinks sued only Labor Services (his immediate employer), Travelers Insurance Company, and the excess insurers of Labor Services, basing his suit on the Jones Act, 46 U.S.C. § 688,[3] and the general maritime law. Labor Services filed a third party complaint against Chevron and Chevron filed a cross complaint against Labor Services. The district court dismissed this action.

In No. 71–150 (389) Spinks sued Labor Services for maintenance during a limited period of time, about four weeks, during which Labor Services discontinued the payment of maintenance while he was convalescing from his first disc surgery. According to Labor Services, the payments were discontinued to enable the employer to recover overpayment of maintenance. Before trial the parties stipulated that the plaintiff was not seeking future maintenance and cure.

Labor Services, which had, through its insurers, paid maintenance and cure to the plaintiff sought to recover these payments from Chevron. The district court enforced the agreement between Labor Services and Chevron subjecting Labor Services for liability for maintenance and cure payments.[4]

---

2. The contract, in part, provided that: "Contractor [Labor Services] agrees to defend and hold Company [Chevron] indemnified and harmless from and against any loss, expense, claim or demand for:

'(a) Injury to or death of Contractor's employees or for damages to or loss of Contractor's property in any way arising out of or connected with the performance by Contractor of services hereunder;  *  *  *.' "

See footnote 4.

3. "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply  .  .  .." 46 U.S.C. § 688 (1970).

4. Before trial the district court rendered judgment in C.A. 70–251 and C.A. 70–252 granting Chevron's motion for a partial summary judgment against Labor Services. The court explained that this judgment recognized that Spinks was contending that he was an employee of Labor Services; that in these suits Labor Services could have no right of indemnity from Chevron, if he were Chevron's employee, "since, in that event, Labor Services would not be liable to the plaintiff anyway." This ruling did not involve C.A.-150, the suit for maintenance and cure. In C.A.-150 Labor Services sued to recover the payments it had made to Spinks through its insurers. The court found that even if Chevron were found to be liable for maintenance and cure, "such liability has ultimately been shifted to Labor Services through their agreement." Since the Court has "determined that there was no negligence on the part of Chevron proximately causing the accident  .  .  .  the indemnity agreement is unenforceable." See Tidewater Oil Co. v. Travelers Ins. Co., 5 Cir. 1972, 468 F.2d 985. The counterclaim of Labor Services and Travelers was therefore dismissed.

The court did not enforce the agreement as to attorney's fees. The court concluded that "the ends of justice would best be met by Chevron and Labor Services each being responsible for its own cost of defense." [5]

## I

Chevron's jack-up drilling barge, the S–66, has a crew of thirty-five or thirty-six men who work, eat, and sleep aboard the barge. Of these, about eighteen are employees of Labor Services who the year around do maintenance work on the barge and perform the labor in jacking the barge up and down at each marine destination. Part of Labor Services' business is the supplying of laborers to work on oil rigs and drilling barges.

In March 1970 oil sprayed from a Chevron platform blew on the barge S–66. Chevron rented a small, portable steam-cleaning machine. The rental invoice reflects that the machine was used from March 3, 1970 to April 20, 1970 and that it was returned with the notation "unit inoperative". The regular Labor Services crew used the steam-cleaning machine every day after its arrival. Labor Services made the operation of the steam-cleaning machine a two-man job, one man to handle the nozzle and the other man to keep the machine running. The machine was equipped with a forty foot long hose. Keeping the machine running required supplying the machine with diesel fuel and with liquid detergent. Five-gallon cans were provided for carrying the fuel and the detergent. Each can when filled weighed forty pounds. The man who had the job of "keeping the steam-cleaning machine going" had the duty of "watching the machine" and spraying the belt with a non-slip compound to attempt to keep the machine from over-heating and stopping. The machine leaked liquid soap almost constantly.

Donnie Spinks was injured on the morning of April 8, 1970 when he stepped on a ramp aboard the S–66. He was nineteen years old at the time, a seaman, and a member of the crew of the barge. He had been employed by Labor Services for about eight months, all of which time had been spent aboard the S–66. On the day of the accident he was working with William Walker in steam-cleaning the heliport. Walker, an older and more experienced man, had been on the barge for about two and a half years. Walker's job was to handle the nozzle and Spinks' job was to supply the soap and diesel and keep the machine running. Their "pusher" (supervisor or foreman) was George Hanks. Walker and Hanks were also employees of Labor Services. Labor Services provided Spinks' pay slips, withheld social security payments and taxes from his salary, and listed him as its employee. As noted, its contract with Chevron made it responsible for maintenance and cure payments for the employees furnished Chevron. Chevron controlled the operations of the S–66, supplied the tools and equipment, and assigned general tasks. The details of work were left to the pushers.

The heliport was connected to the barge proper by a ramp. This ramp was about three to four feet wide and ten to fifteen feet long, on about a three-step incline, and was equipped with handrails. Spinks had to make periodic trips to the barge for soap and fuel used in the spraying machine. Hanks knew that Spinks had made several trips carrying two buckets, one in each hand. Neither Hanks nor anyone else told Spinks to carry or not to carry two buckets. The district court found that the soapy condition on the walkway, which Hanks knew about, had existed for at least four hours. The court found that "it had not been washed down as it should have been and plaintiff and his co-worker

---

**5.** The Court gave as its first reason for this holding, that "neither Labor Services nor Chevron were free from fault". Furthermore for purposes of a Jones Act or maritime claim the injury was not to an employee of Labor Services. "Insofar as the plaintiff's claim for [for four weeks] maintenance and cure is concerned, that portion of the case was insignificant insofar as legal fees are concerned."

must bear the responsibility for that failure." There was available on the barge an absorbent substance known as Dresser-Dri, the use of which might have made the footing less slippery. Spinks could have used it without permission, but did not. Nor did Hanks direct him to use it. The Chevron barge maintenance foreman testified that Labor Services pusher was the one to initiate the placing of the Dresser-Dri in the area where men would work.

On the first step of the ramp, Spinks fell, while carrying the heavy buckets. He suffered spinal disc damage which required two surgical operations to repair.

The trial court found that both Labor Services and Chevron were negligent in permitting the soap machine to run on diesel fuel instead of kerosene, in not correcting the leak around the piston pump of the machine, and that this use of a faulty soap machine, "that is one with a leak in the pump area and one on which the belt frequently slipped, might be deemed to constitute an unseaworthy condition." But the court held that their negligence and the "deemed" unseaworthiness were not proximate causes of Spinks' injury. Indeed, the court found that Spinks' negligence was the sole proximate cause of his injury, because of (1) his "*and his co-worker's*" failure to wash down the deck and ramp, (2) his decision to carry two heavy buckets, (3) his failure to use handrails, and (4) his failure to use Dresser-Dri. The court held that, as far as Spinks was concerned, the vessel was not unseaworthy, for Spinks' job was to repair the very conditions that were the subject of the unseaworthiness.

## II

Spinks sued only Labor Services under the Jones Act. The district court grant-

ed an involuntary dismissal on the Jones Act claim, because (1) Labor Services was neither the owner nor the operator of the vessel, and (2) Spinks was the borrowed employee of Chevron. Spinks appeals this ruling, as well as the finding that his injury was caused by his sole negligence. He argues that (1) a seaman may have more than one Jones Act employer, and (2) under the admiralty doctrine of comparative negligence, at least some of the blame must be imputed to Labor Services through Hanks' failure to supervise Spinks properly and Walker's failure (with Spinks) to wash down the deck.

■ A. We conclude that the district court erred in denying recovery on the ground that Spinks' negligence was the sole proximate cause of his injuries. An employer's negligence need not be the sole proximate cause of an injury to result in his liability, but may merely be a contributing cause of the accident. Hern v. Moran Towing & Transp. Co., 2 Cir. 1943, 138 F.2d 900; Johnson v. Griffiths S.S. Co., 9 Cir. 1945, 150 F.2d 224; Norris, The Law of Seamen § 693 (3d ed. 1970); *cf.* Andrews v. Chemical Carriers, Inc., 3 Cir. 1972, 457 F.2d 636, cert. denied, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126; Restatement 2d, Torts § 430, Com. b. In Sanford Bros. Boats, Inc. v. Vidrine, 5 Cir. 1969, 412 F.2d 958 this Court declared: "The question of proximate cause in an action under the Jones Act turns on whether the actions of the defendant contributed to the injury even in the slightest degree. Proximate cause is not destroyed merely because the plaintiff may also have contributed to his own injury."

■ The trial judge regarded the issue of liability as close: The day before he held for the defendants, he announced that he would find the defendants liable.[6] In addition, the district court

---

**6.** At the conclusion of the trial on liability and after hearing argument of counsel the district judge declared from the bench: "[T]here will undoubtedly be liability found against Chevron and in all probability liability will be found against Labor Services and there will also undoubtedly for sure be contributory negligence found against the plain-

tiff. So that will necessitate the taking of testimony in connection with quantum.

MR. MELANCON: I didn't hear, your Honor, I missed a part of it. You said there will be liability found on the part of Chevron?

THE COURT: Yes, indeed.

·found *both* Walker and Spinks negligent for failing to wash down the soapy deck. Since the fellow-servant rule is inapplicable in admiralty, Walker's negligence must be imputed to his employer under familiar respondeat superior principles. Gilmore & Black, The Law of Admiralty § 6–20 (1957). At least some negligence must be assigned to Labor Services' pusher, Hanks, who was aware of the dangerous condition and Spinks' working methods. *See* Ballwanz v. Isthmian Lines, Inc., 4 Cir. 1963, 319 F.2d 457. If a pusher's job does not include a duty to prevent accidents, it is difficult to understand what a pusher does. We note that the trial court found both defendants negligent—though not proximately negligent—for this was the first reason the court gave for refusing to allow Chevron attorney's fees under its indemnity contract with Labor Services.[7] In its final judgment the district court declared: "As indicated in this Court's opinion, neither Labor Services nor Chevron were free from fault in this case. The Court simply found that neither the negligence

of Chevron nor the negligence of Labor Services was a proximate cause of the accident involved in spite of the fact that there was evidence of negligence on the part of both of these defendants."

■ B. The concept of proximate cause often obscures the true analysis of a tort. A court makes a policy judgment on the limits of liability when causation in fact has been established. Prosser, Torts § 42 (4th ed. 1971). This Court has applied in maritime law the legal cause analysis, as it is used in common law torts in admiralty.[8] For example, in Watz v. Zapata Off-Shore Co., 5 Cir. 1970, 431 F.2d 100, we held that an independent intervening cause did not relieve a manufacturer of a defective hoist of liability, when its negligence was a substantial factor in bringing about the harm. We looked to the Second Restatement of Torts for guidance, citing section 435(1).

■ The American Law Institute's Restatement 2d of Torts adopts the mod-

---

MR. MELANCON: And liability on the part of Labor Services?

THE COURT: Yes, indeed.

MR. MELANCON: And liability, or rather contributory negligence on the part of the plaintiff?

THE COURT: Yes, indeed.

MR. MELANCON: Now, your Honor, in view of the expression of the Court, would it state at this time whether or not the liability you are contemplating against Chevron is predicated upon an interpretation of an employer-employee relationship?

THE COURT: No. It will be broad enough to hold Chevron responsible and Labor Services. I simply make this decision now in order to get on with the medical tomorrow, but there is no question—let me say this, gentlemen, there is no question but what the holding will say that the plaintiff was an employee of Chevron for the purpose of the Jones Act claim. There is no question about that. It may not make a great deal of difference, because in all probability, liability will also be predicated on negligence and upon unseaworthiness, as well as a possible finding of liability for Jones Act also.

There will be a finding of liability also on grounds of negligence, as far as Labor Services are concerned. There will be found contributory negligence on the part

of the plaintiff. In what degree, I can't state at this time, but at least that will give sufficient notice to all of you where the liability will lie for the purpose of going forward now with the question of quantum. . . ."

7. See footnote 2.

8. Admiralty customarily follows common law tort developments, when they do not interfere with its basic policies. The doctrine of Palsgraf v. Long Island RR, 1928, 248 N.Y. 339, 162 N.E. 99, that an actor is not answerable in tort to a person to whom he owed no duty, was adopted in admiralty in Sinram v. Pennsylvania R.R., 2 Cir. 1932, 61 F.2d 767, 770. Similarly the holding of MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050 dispensing with privity (embodied in the First Restatement § 395 (1934)) came into admiralty in Sieracki v. Seas Shipping Co., 3 Cir. 1945, 149 F.2d 98, aff'd, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. When a trend in the law advances the remedial purposes of maritime tort law, admiralty will adopt it in place of the prevailing state law. Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (comparative negligence). The theory of legal cause, because it is suitable for admiralty, should be preferred to proximate cause in maritime tort law.

ern concept of legal cause. The elements of legal cause are negligence, a causal connection between the negligence and the injury, the invasion of a legally protected interest, and lack of a countervailing legally protected interest as a defense to liability. Restatement 2d Torts § 9. The defendant's negligence must be a substantial factor in bringing about the harm, with no rule of law relieving the actor of fault. *Id.* § 431. "Substantial" means more than "but for" the negligence, the harm would not have resulted, (*id.* Com. a) and more than merely negligible negligence. *Id.* Com. b. The gist of it is that some responsibility for the effect must accompany the cause.

Because of strong policy considerations in admiralty, legal cause analysis is particularly suited to maritime tort law. Seamen as a class have often been styled "wards of the court", and employers have been assigned a high standard of duty towards them. This policy of protecting seamen from the hazards of their profession is evidenced by the employer's strict liability for providing a seaworthy vessel, and supplying maintenance and cure for ill seamen. In negligence cases, admiralty prohibits defenses of assumption of risk, *see* Neal v. Saga Shipping Co., 5 Cir. 1969, 407 F.2d 481, and contributory negligence, *see* Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. Under the Jones Act, even the slightest negligence suffices for a finding of liability.[9] Ferguson v. Moore-McCormack Lines, Inc., 1957, 352 U.S. 521, 77 S.Ct.

457, 1 L.Ed.2d 511.[10] It would be anomalous to allow an overly strict interpretation of proximate cause to defeat the remedial purposes of admiralty tort law.

C. The duty owed by an employer to a seaman is so broad that it encompasses the duty to provide a safe place to work. Vickers v. Tumey, 5 Cir. 1961, 290 F.2d 426, 429–432. *See* Gilmore & Black, The Law of Admiralty § 6–37 (1957); Norris, The Law of Seaman § 692 (3d ed. 1970). By comparison, the seaman's duty to protect himself (the ground for any countervailing legal interest serving to exculpate the employer) is slight. His duty is to do the work assigned, not to find the safest method of work. This is especially true when his supervisor, Hanks in this case, knows the working method used by the seaman, and does nothing about it. *See Ballwanz,* 319 F.2d at 462; Adams v. United States, 9 Cir. 1968, 393 F.2d 903.

As between Spinks, a nineteen year old seaman, and his supervisor, it cannot be said that Spinks *alone* had the duty to realize that carrying two buckets was dangerous, or to apply the anti-skid material, or to see that the deck was washed down. As between Spinks and his co-worker, Walker was older, had worked on the barge two and a half years, and handled the nozzle applying the soap and steam in washing down the soapy deck. We state no opinion on the relative responsibility of these individuals. We do hold, however, that in the circumstances this case presents, the entire burden cannot be placed on the lowest member of the hierarchy.[11]

---

9. *See* Sanford Bros. Boats, Inc. v. Vidrine, 5 Cir. 1969, 412 F.2d 958.

10. Justice Frankfurter, in his dissent in Rogers v. Missouri Pacific R.R., 1957, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, a companion case to Ferguson v. Moore-McCormack Lines, Inc., 1957, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511, stated the Court's view that " . . . on the question of causality, the [FELA] has tried to avoid issues about 'sole proximate cause,' meeting the requirement of a causal relation with the language that the injury must result 'in whole or in part' from the employer's negligence." 352 U.S. at 538

n. 7, 77 S.Ct. at 467 n. 7, 1 L.Ed.2d at 528 n. 7.

11. In Ballwanz v. Isthmian Lines, Inc., 4 Cir. 1963, 319 F.2d 457, the court characterized the duty of employees in the status of Spinks as follows:

His duty was to do his work as he was instructed. He was in no sense obligated to protest against the method of operation which he had been instructed to follow or to devise a safer method, nor was he obligated to call for additional or different equipment. If the doctrine of unseaworthiness means anything, it is totally repugnant

## III

We reverse the ruling that Labor Services was not Spinks' Jones Act employer. The Jones Act, 46 U.S.C. § 688 (1970), is remedial legislation, extending to seamen the rights accorded railway workers under the Federal Employers' Liability Act [FELA], 45 U.S.C. §§ 51–60 (1970). As such, it should be liberally construed in favor of injured seamen. Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 375, 53 S.Ct. 173, 175, 77 L.Ed. 368, 373; See Norris, The Law of Seamen § 662 (1970).

A. By the express terms of the Jones Act an employer-employee relationship is essential to recovery. Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692; Norris, The Law of Seamen § 670 (1970); Gilmore & Black, The Law of Admiralty § 6–21 (1957). The employer need not be the owner or operator of the vessel. Barrios v. Louisiana Construction Materials Co., 5 Cir. 1972, 465 F.2d 1157, 1164–1165.[12] Independent contractors have been held liable under the Act. Barrios; Constance v. Johnston Drilling Co., 5 Cir. 1970, 422 F.2d 369; Mahramas v. American Export Isbrandtsen Lines, 2 Cir. 1973, 475 F.2d 165; Savard v. Marine Contractors Inc., 2 Cir. 1972, 471 F.2d 536, cert. denied, 412 U.S. 943, 93 S.Ct. 2778, 37 L.Ed.2d 404; cf. Hanks v. California Co., W.D.La. 1967, 280 F.Supp. 730, 738 n. 14; Hebert v. California Co., W.D.La.1967, 280 F.Supp. 754, 761 n.3.

The posture of this case is unusual in that most injured seamen seek to reach a more solvent prime contractor or shipowner by alleging an employment relationship under the borrowed servant doctrine. See Restatement 2d Agency §§ 220–227. The courts have been receptive to this theory. If a prime contractor has assumed enough of the incidents of an employer, such as the right to control an employee's work, he will be deemed a seaman's employer. United States v. W. M. Webb, Inc., 1970, 397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207. See Gilmore & Black, The Law of Admiralty § 4–23 (1957).

B. That a seaman is a borrowed servant of one employer does not mean that he thereby ceases to be his immediate employer's servant. Restatement 2d Agency § 227, Comment b. In any common sense meaning of the term, Labor Services was Spinks' employer. He was hired and paid by Labor Services. That company, not Chevron, withheld taxes and social security payments from his salary, and forwarded them to the government as required of an employer by law. Labor Services employed Spinks' co-worker Walker and his supervisor Hanks. Hanks could fire Spinks;[13] the record strongly suggests that Chevron could not—it could merely have Labor Services recall and replace him.[14]

---

to the doctrine of assumption of risk on the part of seamen. The plaintiff in this case was at the very bottom of the hierarchy of command, and the effect of the charge was to place too much responsibility upon him for the over-all operations of the stevedore.

12. Barrios v. Louisiana Construction Materials Co., 5 Cir. 1972, 465 F.2d 1157, specifically held that the seaman who was there employed by a contractor, Williams-McWilliams Company, on a barge owned and operated by one A. O. Rappellet had a Jones Act claim against Williams-McWilliams, even though the barge was owned and operated by Rappellet. The court there specifically treated and discussed cases cited for and against the proposition that a seaman employee can have a Jones Act claim against his employer who is not the shipowner or operator.

13. Q. (By Chevron's attorney) Did Mr. Hanks have the power to hire or fire or run you off the job?

A. (By Walker) Yes, sir, he did.

Q. And was Mr. Spinks' salary also paid by Labor Services?

A. Yes, sir.

\* \* \* \* \* \*

Q. And you received your pay, your wages from Labor Services, did you not?

A. (By Spinks) Yes, sir.

14. Q. (By Chevron's attorney) Now, let us be quite specific, sir, and let us be specific about Mr. Spinks on April 5, 1970. Did you, sir, if you were on the S–66 on that day, have the power and authority to fire Mr. Spinks and run him off the job?

A. (By Mr. Boren, Chevron's barge foreman) No, sir.

Labor Services made a profit for every day Spinks was aboard the S-66. Now that he is injured, Labor Services cannot forget him. We do not quarrel with the trial court's finding that Chevron had sufficient control over him to be a borrowing employer. We merely hold that under the Jones Act, Labor Services remained his employer.[15]

C. Much of the difficulty in this area stems from the Supreme Court's dictum in Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 791, 69 S.Ct. 1317, 1322, 93 L.Ed. 1692, 1698, that " . . . under the Jones Act only one person, firm, or corporation may be sued as employer".[16] In that case the court held only that a seaman could have no Jones Act recovery from a general shipping agent when his wartime employer was the United States. Moreover, it has been held that a seaman may have but one Jones Act employer. See Mahramas v. American Export Isbrandtsen Lines, 2 Cir. 1972, 471 F.2d 165;[17] Savard v. Marine Contracting Inc., 2 Cir. 1972, 471 F.2d 536.

██ If this means that an injured seaman must speculate at his peril on whether the trial court ultimately will find him a borrowed employee of the shipowner, or an employee of his immediate employer, we reject the theory. Such a rule can result in defeating Jones Act rights through contractual manipulations. See Mahramas, 471 F.2d at 173 (Oakes, J. dissenting), Hanks, 280 F.Supp. at 738. We see nothing offensive in suing an immediate employer under the Act, or even both employers in the alternative. The defendants can sort out which between them will bear the final cost of recovery, either through common law indemnity or contribution principles,[18] or contractual provisions, as in the instant case. This is especially important in the area of offshore drilling operations, where oil exploration companies customarily contract for all labor.

The Jones Act incorporates standards established by the FELA.[19] Under the FELA an employee may have more than one employer. It would seem reasonable therefore that a seaman may have more than one Jones Act employer. In Shenker v. B. & O. R. R., 1963, 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709, an employee of the B & O was injured while working on another railroad company's car. The Supreme Court held that his immediate employer owed him the duty of a safe place to work, which it breached. This

---

Q. Now assuming a situation presenting itself which to you was intolerable or not acceptable that Mr. Spinks was doing—whatever it may have been—what would have been the customary and routine procedure of your handling such a situation?

A. I would have recommended to the pusher that he be let go or talked to, whichever the case might be . . . . But I could not personally fire the man. I had no authority of that kind.

15. In United States v. W. M. Webb, Inc., 1970, 397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207, the Supreme Court held that a shipowner must completely divest himself of control, as in a bareboat charter, to avoid being a seaman's employer. The same reasoning applies more forcefully to Labor Services, Spinks' immediate employer.

Furthermore, under the FELA an employer may be liable for the acts of its agents. "Agents" is liberally construed under that Act. Hopson v. Texaco, Inc., 1966, 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740 (carrying the FELA rule into admiralty). Whether

phrased as dual employers or employer-agent, the result is the same: an injured seaman may reach either party through the Jones Act, unless of course, either has ceased completely to be his employer. Their status and liability inter se is not the injured seaman's concern.

16. The Court may have meant that a seaman may not recover from more than one employer under the Jones Act. Norris, The Law of Seamen § 670 at 312 n. 11 (3d ed. 1970).

17. But in Mahramas the court specifically stated that the plaintiff, there a hairdresser employed by "The House of Albert" beauty shop on a luxury liner, was entitled to a Jones Act claim against The House of Albert despite the fact that The House of Albert was not the owner or operator of the vessel.

18. For example, the actively negligent party must indemnify the passively negligent party. Barrios, 465 F.2d at 1167; Constance v. Johnston Drilling Co., 5 Cir. 1970, 422 F.2d 369.

19. See footnote 3.

Circuit has held that a railroad employee may have two employers.[20] Porter v. St. Louis-San Francisco R.R., 5 Cir. 1966, 354 F.2d 840. But we need not, pass on the question whether Spinks could sue Chevron and Labor Services under the Jones Act; Spinks sued only one employer—Labor Services.

IV

■ Resolution of the proximate cause issue obviates the need to review the issue of contractual indemnity, because the trial court expressly based its holding on the defendants' lack of fault for Spinks' injuries. We observe, however, as did the trial court, that no public policy prohibits parties from using a contract to shift liability for payment of tort claims, as long as the injured seaman's rights are not prejudiced thereby. Tidewater Oil Co. v. Travelers Ins. Co., 5 Cir. 1972, 468 F.2d 985.

■ There is no good reason not to enforce all of the contract, including Labor Services' liability for attorney fees. Since the right is contractual, the court does not possess the same equitable discretion to deny attorney's fees that it has when fashioning equitable remedies, or applying a statute which allows the discretionary award of such fees. No less than carrying adequate insurance, this liability is figured into the rates charged by independent contractors.

V

■ Traditionally, maintenance and cure is "a duty . . . annexed by law to a relation" owed by an employer to an injured seaman to the point of maximum cure. Cortes v. Baltimore Insular Line Inc., 1932, 287 U.S. 367, 53

S.Ct. 173, 77 L.Ed. 368. A line of cases has held that the Jones Act employer is also the maintenance and cure employer. See Braen v. Pfeifer Oil Transp. Co., 1959, 361 U.S. 129, 132, 80 S.Ct. 247, 4 L.Ed.2d 191; Vincent v. Harvey Well Service, Inc., 5 Cir., 1971, 441 F.2d 146. When the employer is an independent contractor, nonetheless he owes maintenance and cure. See, e. g., Mahramas, 475 F.2d at 171; Sims v. Marine Catering Service, Inc., D–La.1963, 217 F.Supp. 511. When, however, a prime contractor or shipowner has assumed control over an employee so that the independent contractor ceases to be his employer entirely, the borrowing employer becomes liable for maintenance and cure. Smith v. Dale Hart, Inc., W.D.La.1970, 313 F.Supp. 1164. Here, too, we pretermit deciding which employer owes maintenance and cure, for that would depend in large part on the resolution of the indemnity question. But it is clear that the fact that Labor Services has paid maintenance and cure to date should not be construed as an admission that it is Spinks' maintenance and cure employer, as Chevron contends. Such a rule would discourage payments to injured seamen when they are most in need.

Spinks' allegations concerning discontinuance of maintenance and cure payments for one month are better dealt with on remand.

VI

■ The trial court concluded that the soapy condition of the deck was created to correct a previous unseaworthy condition (the oil on the deck), and could not itself constitute an unseaworthy condition. Applying soapy solution to the

20. In Porter v. St. Louis-San Francisco Railway Company, 5 Cir. 1966, 354 F.2d 840, this Court ruled:

The allegations that Porter was an employee of Union does not preclude plaintiff from showing, if she can, that under the circumstances that existed at the time of the injury Porter was an employee of Frisco within the meaning of that term as it is used in the Federal Employers' Liability Act.

"Under some circumstances a person may be the servant of two masters at the same time; and the general servant of the one master may, with his consent, be lent to another person and become his servant with respect to a particular transaction or piece of work." 56 C.J.S. Master & Servant § 2d (2), p. 37.

Carriers Insurance Exchange v. Truck Insurance Exchange, (D.C.Va.) 203 F.Supp. 764, 768, affirmed, 4 Cir., 310 F.2d 653.

deck was Spinks' ordinary work aboard the S–66. We find no error in this holding. *See* Keel v. Greenville Midstream Service, Inc., 5 Cir. 1963, 321 F.2d 903; Lind v. American Trading and Production Corp., 9 Cir. 1961, 294 F.2d 342.

\* \* \*

We conclude that the cause must be reversed and remanded for (1) reconsideration of liability, both under the Jones Act and maritime law, consistent with the principles stated in this opinion; (2) reconsideration of the indemnity provisions of the contract between Labor Services and Chevron; and (3) the determination of damages, should the district court find for the plaintiff.

Reversed in part and remanded.