Robert STEVENS, Plaintiff,

v.

EAST–WEST TOWING COMPANY, INC.,
Avondale Shipyards, Inc., Vanguard In-
surance, Central Marine Services, Inc.,
Defendants.

Civ. A. No. 74–2879.

United States District Court,
E. D. Louisiana.

April 23, 1979.

 

Robert S. Cooper, Jr., Baton Rouge, La., for plaintiff.

Winston E. Rice, Richmond M. Eustis, New Orleans, La., for defendant East-West Towing Co., Inc.

John O. Charrier, Jr., New Orleans, La., for defendant Avondale Shipyards, Inc. and Third-Party Defendant Central Marine Services, Inc.

CASSIBRY, District Judge:

The plaintiff, Robert Stevens, brought suit for personal injuries, allegedly sustained on February 4, 1974, against East-West Towing Company (East-West), his employer, under the Jones Act, 46 U.S.C. § 688, against Avondale Shipyards Incorporated (Avondale), bareboat charterer of Barge W–102, and Central Marine Service Company (Central Marine), the owner of the barge, under general admiralty jurisdiction, 28 U.S.C. § 1333. East-West settled with the plaintiff for $200,000 and an assignment of his claim against Avondale. Before the court are the remaining ancillary third party actions for indemnification and contribution among the defendants.

Robert Stevens was employed by East-West as a wheelman aboard its tug the M/V DELTA DAWN, which was under oral contract to move barges for Avondale. Among the barges to be moved was Barge W–102, which had been bareboat chartered by Central Marine to Avondale since January 1, 1971. On the day of the accident, the barge was moored next to the drilling rig ST. LOUIS, then under construction.

On the morning of February 4, 1974, the DELTA DAWN was called upon to move Barge W–102. The barge was missing a number of bitts and cleats, including the one amidships which was normally necessary in order for a tug to perform a "hip" tow. However, the barge had been towed on the hip previously by the DELTA DAWN by tieing the bow line either to the leg of a crane secured to the deck of the barge, or tieing to a metal, tackwelded stop plate about two inches wide, ten inches long and one-half inch thick on the leg of the crane. The crew of the DELTA DAWN

had been warned by Joseph Lynch, the operator of the crane on the barge and employed by the crane owner Phillips Brothers, that the stop plate was not strong.

On the morning of the accident, Stevens secured the bow line to the stop plate. Before the stern line could be secured, the river caught the tug and the bow line pulled taut causing the stop plate to break loose and strike the plaintiff on the head. As a result of the accident, Stevens is permanently blinded in his right eye and suffers a facial deformity. Further, at the time of the accident, there appears to have been some brain damage and plaintiff continues to suffer memory loss.

According to the deposition testimony of Paul H. Verdin, Captain of the vessel, and Joseph Rivet, the deckhand, the tug had only tied up to await further instructions from Avondale as to where to move the barge. They both stated in their depositions that the tug was not yet preparing for the tow. Stevens asserted in his deposition that the lines securing the barge to the rig were still intact, so he knew they were not going to move the barge at that time.

Assuming their liability to Stevens to be certain under the Jones Act, East-West settled plaintiff's claim against them for $200,-000.00 and an assignment of his claim against Avondale and Central Marine. East-West now seeks indemnification from Avondale and Central Marine alleging that the unseaworthiness of the barge was the sole cause of Stevens' injuries. If East-West is found to have been negligent, it asks, in the alternative, for contribution from Avondale and Central Marine on account of the unseaworthiness.

Avondale denies the unseaworthiness of the barge, and claims that even if necessary bitts and cleats were missing, East-West is solely liable either because they had the last clear chance to avoid the accident, or they breached the warranty of workmanlike services, or they breached the duty of a tug to its tow. Avondale claims, in the alternative, if they are found negligent, indemnification or contribution from East-West on these same grounds. Avondale also alleges

a right to limit its liability to the value of the barge. Central Marine denies all liability because of the bareboat charter to Avondale.

■ Defendant Central Marine is not liable to East-West because of the bareboat charter agreement between Central Marine and Avondale, which results in Avondale's ownership pro hac vice for the term of the charter. *Reed v. United States*, 78 U.S. (11 Wall.) 591, 20 L.Ed. 220; *Leary v. United States*, 81 U.S. (14 Wall.) 607, 20 L.Ed. 756; *Haskins v. Point Towing Co.*, 421 F.2d 532 (3rd Cir. 1970).

■ I find Avondale's Barge W–102 was unseaworthy. Although the evidence concerning the exact number of bitts and cleats still in place on the barge at the time of the accident is disputed, the single disinterested party, Lynch, the crane operator, stated in his deposition that there was only one bitt (or timberhead) on the barge, and that he had seen other bitts on the barge pulled off due to their poor condition.

■ A barge owner does not have a duty to provide the best equipment, but he does have a duty to provide the equipment necessary to perform the assigned task, and that equipment must be sufficient to withstand the forces likely to be incurred. *Walker v. Harris*, 335 F.2d 185 (5th Cir. 1964). The owner must provide a vessel that is reasonably fit for its intended use. This duty to provide a seaworthy vessel requires that the vessel, its gear, appurtenances and operation must be reasonably safe. *Drachenberg v. Canal Barge Co., Inc.*, 571 F.2d 912 (5th Cir. 1978). "A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair." *Usner v. Luckenbach*, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). In the case at bar, Avondale's barge was not reasonably fitted for its intended use as not only were necessary appurtenances, i. e. the bitts and cleats, unsafe and in disrepair, but were absent. See Alex L. Parks, J. D., The Law of Tug, Tow and Pilotage, Chapter VII (1971).

■ I find that Avondale was also negligent. Avondale's failure to remedy the situation resulted in a continuing negligent act. See 1 Martin J. Norris, The Law of Maritime Personal Injuries, § 122 (3rd ed. 1975). Although the unseaworthiness results in liability for Avondale, according to the rule in *Horton & Horton, Inc. v. T/S J. E. DYER*, 428 F.2d 1131 (5th Cir. 1970), the owner is also liable for continuing negligence when, once notified, he fails to remedy the condition which renders the vessel unseaworthy.

■ Because of this knowledge, I find that Avondale is not allowed to limit its liability to the value of the barge. Avondale, through its employee, Douglas Adams, shipfitter foreman, had knowledge of the missing bitts and cleats. Further, Adams' scope of authority was broad enough that his privity or knowledge as to the unseaworthiness of the barge was in law that of Avondale. *Coleman v. Jahncke Service, Inc.*, 341 F.2d 956, rehearing denied 348 F.2d 868 (5th Cir. 1965); *In re Converse*, 61 F.2d 777 (2d Cir. 1932).

■ Although Avondale cites Adams' deposition to the effect that he did not know if any bitts and cleats were missing, his previous statements therein indicate that he should have known. In his deposition, Adams states that he ordered Stevens not to tie up to the saddle used to secure the crane to the deck of the barge. Adams continues that Stevens told him there were no other places on the barge to which he could secure the lines. After this exchange, if Adams did not know of the condition, he should have known, and further, he had an affirmative duty to find out. Failing to investigate or to observe what was around him every day constitutes negligent ignorance. William L. Prosser, Handbook of the Law of Torts, § 32 (4th ed. 1971). Finally, such negligence must be imputed to Avondale under familiar principles of respondeat superior. *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 222 (5th Cir. 1975).

Avondale claims it should be relieved from any liability on account of its negligence because East-West had the last clear chance to avoid the accident. "In determin-

ing causation in maritime matters, the applicability of such doctrines as last clear chance and the interruption of negligence by a subsequent intervening negligence is questionable." *Horton* at 1135. Admiralty courts, as civil law courts, have not had to deal with acceptable methods of escaping the harsh rule of contributory negligence which bars recovery. "The shift in thinking, reflected in comparative negligence statutes, toward evaluating the conduct of the parties and weighing their proportionate share in the accident . . . is now leaving little elbow room for the last clear chance doctrine." *Cenac Towing Co. v. Richmond*, 265 F.2d 466, 470 (5th Cir. 1959).

■ Therefore, in admiralty, none of the traditional policy reasons for applying the doctrine exists. In fact, had Stevens pursued his claim, either or both of the defendants in the original action could have been held responsible for all or part of the damages, despite any contributory negligence on Stevens' part. Since plaintiff could have elected to make Avondale bear its share of the damages caused by its negligence, I see no reason why East-West should not be accorded the same right. *Cooper Stevedoring Co. v. Fritz Kepke, et al.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974).

In addition, counsel for Avondale has not cited any case in which the doctrine of last clear chance was applied to a maritime personal injury action. The cases cited by Avondale are either collision or sinking cases and cannot be analogized to the present suit. *Chemical Transporter, Inc. v. M. Turecamo, Inc.*, 290 F.2d 496 (2d Cir. 1961); *The Perth Amboy No. 4*, 135 F.2d 404 (2d Cir. 1943); *Southwestern Sugar & Molasses Co. v. River Terminals Corp.*, 153 F.Supp. 923 (E.D.La.1957); *Houma Well Service, Inc. v. Tug CAPT. O'BRIEN*, 312 F.Supp. 257 (E.D.La.1970).

■ Avondale further seeks to avoid liability for its negligence by asserting East-West's sole liability because of an alleged breach of a warranty of workmanlike performance. Avondale asserts that the barge could have been successfully towed by putting out face wires, by assuming a different position along the starboard side and there-

by making use of cleats allegedly still standing, by running a line to the alleged cleat 20 to 30 feet above her bow, or by simply putting the line around the leg of the crane. While this may be true as to the execution of a successful tow, all three persons on the tug stated in their depositions that they were not towing the barge at the time of the accident, and that, in fact, the barge was still tied to the rig when the accident occurred. Further, in support of this contention, Avondale cites *Fairmont Shipping Corp. v. Chevron International Oil Co., Inc.*, 511 F.2d 1252 (2d Cir. 1975). However, *Fairmont*, supra, is inapplicable to this case. The Court in *Fairmont* held the crucial elements in a warranty of workmanlike performance and its breach to be a contract by which a shipowner relies on the expertise of another to perform services without his supervision and control; and the improper, unsafe or incompetent execution of those services which would foreseeably render the vessel unseaworthy or bring into play a pre-existing condition, thereby exposing the shipowner to liability. In the instant case, the actions of Stevens did not render the vessel unseaworthy. Because of the missing bitts and cleats, the vessel was unseaworthy prior to any action on the plaintiff's part. Further, his actions did not bring into play the pre-existing condition. The missing bitts and cleats did not constitute a latent defect.

Avondale finally alleges, in order to avoid liability for its negligence, East-West breached the duty of a tug to its tow to exercise reasonable care and maritime skill. Although this duty is not necessarily lessened by the fact that the tow was unseaworthy at the inception of a voyage, the courts have found a tug not liable for such a breach when the bitt on a tow pulled out, PERSEVERANCE—VIOLETTE, 1929 A.M.C. 159 (E.D.N.Y.), or when the bitt was rotten, CONWAY NO. 20—PORTER, 1930 A.M.C. 2013 (E.D.N.Y.). In the case at bar, the bitts neither pulled out nor were they rotten. Rather, they were absent.

■ However, East-West was also negligent under the principles of respondeat superior. As the Court in *Spinks* at 222, stated, "At least some of the negligence must be assigned to [East-West's employee, Capt. Paul F. Verdin], who was aware of the dangerous condition and [Stevens'] working methods." Although it is disputed whether the tug was merely tieing up to await further instruction or preparing for the tow, Captain Verdin's deposition indicates that he was aware of the dangerous situation caused by Stevens securing the line to the stop plate. Verdin stated in his deposition that he ordered Stevens to untie the line, but admitted that, although he gave the order and was cognizant of the danger, Stevens' back was turned and Verdin never saw the plaintiff acknowledge the order. Despite this, Verdin made no further attempt to insure that the line was untied and the danger averted.

In the present suit, both Avondale and East-West were guilty of negligence which concurred to cause the injury. Because of the maritime stylization of seamen as wards of the Court, admiralty law has assigned a high standard of duty to employers and shipowners. As a result of this strong policy, actual cause analysis is singularly appropriate in maritime tort. *Spinks*, supra. Under a cause-in-fact analysis, it is clear that the omissions of Avondale as well as the acts of East-West were necessary antecedents to the injury, both contributing to the result that without them would not have occurred.

It would be difficult based on the depositions to evaluate the responsibility between East-West on the one hand and Avondale on the other. The unseaworthiness of the barge and the negligence of both tortfeasors were necessary to the occurrence, therefore the liability will be divided equally between them. The Supreme Court in the *Cooper* case, 417 U.S. at p. 109, 94 S.Ct. 2174, affirmed such a division by a district court when the court found to do otherwise would be difficult and arbitrary.

■ Considering the plaintiff's injuries, the cost of his medical care to date, and the costs he may incur in the future as a result of the accident, combined with his age and inability to work in the same trade or capacity, the settlement was not excessive, thereby warranting a reduction in the

amount of contribution owed by Avondale. As long ago as 1958, a plaintiff suing under the Federal Employers' Liability Act for the loss of an eye was awarded $100,000. *Missouri-Kansas-Texas Railroad Co. of Texas v. Bush*, Tex.Civ.App., 310 S.W.2d 404, cert. den. 358 U.S. 827, 79 S.Ct. 45, 3 L.Ed.2d 67 (1958).

Finally, settlement value of an injury depends on the degree of certainty of the imposition of liability. In the instant case, the court in deciding the questions of indemnification and contribution, has had to reach conclusions of law concerning the respective liability of the parties. Accordingly, in view of the resolution of these issues, it is evident that the parties would have been liable to the plaintiff and it is not unreasonable to assume that a jury would have awarded the plaintiff an even greater sum.

East-West is entitled to recover from Avondale the amount of $100,000.00, plus one-half of the costs. Recovery of East-West against Central Marine is denied.

The Clerk shall enter judgment accordingly.