Gabriel **VINCENT**, Plaintiff-Appellant,

v.

**HARVEY WELL SERVICE** et al.,
Defendants-Appellees.
No. 29401.

United States Court of Appeals,
Fifth Circuit.

April 8, 1971.

Rehearing Denied May 4, 1971.

Reginald T. Badeaux, Jr., Darryl J. Tschirn, New Orleans, La., for plaintiff-appellant.

Donald L. King, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants-appellees, Harvey Well Service and The Travelers Ins. Co.

Before JOHN R. BROWN, Chief Judge, and WISDOM and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Although probably not so undisclosed as Cardozo envisaged,[1] this case presents at least a new wrinkle, Mike Hooks, Inc. v. Pena, 5 Cir., 1963, 313 F.2d 696, 1963 A.M.C. 355, on the meaning of "the course of his employment" in the Jones

1. "It is when the colors do not match, when the references in the index fail, when there is no decisive precedent, that the serious business of the Judge begins." Cardozo, Nature of the Judicial Process at 21.

Act, 46 U.S.C.A. § 688.[2] More specifically, the question is whether a *Robison*[3] amphibious-drilling-rig-seaman may recover against his employer for injuries he received while *riding as a passenger in an automobile furnished by the employer and driven by a fellow employee who is paid for that work in order to transport off-duty employees from the pierhead to a convenient metropolitan assembly point 50 miles away.* We answer in the affirmative and reverse the Trial Judge's summary judgment for the employer. Vincent v. Harvey Well Service, E.D.La., 1970, 309 F.Supp. 964.

The stipulations provide an adequate description of the factual background. Plaintiff worked as a derrick-hand in the drilling crew of Harvey Well Service Rig #2, an inland water submersible drilling barge which is moved by a tug. The crew worked twelve hour on, twenty-four hour off tours and did not sleep aboard the platform. The employer provided a car to transport employees from Jimmie's Esso Service Station in Gretna, Louisiana to the pierhead at Venice, Louisiana[4] and 12 hours later, back to Gretna. The driver not only worked aboard Rig #2 but was also to drive employees to and from the service station. For this he was paid 3 hours per shift extra to compensate him for his driving time. The crew members were not required to travel in the employer's vehicle, but instead were permitted to supply or obtain their own transportation. They did not receive any travel pay or duty pay while riding in the company car.

After work on November 30, 1967 the drilling crew including Vincent left Venice for Gretna in the company-owned-driven automobile. Some 10 miles or so below Gretna the car was involved in a wreck which formulates the basis of this lawsuit.

In holding that the Jones Act extended to land-based injuries—a decision then thought to be a giant leap, but in retrospect more nearly one small step for seamen—the Supreme Court in O'Donnell v. Great Lakes Dredge and Dock Company, 1943, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596, 1943 A.M.C. 149, gave a general guideline to determine if the seaman is acting "in the course of his employment." The Court declared:

> "The right of recovery in the Jones Act is given to the seaman as such, and, as in the case of maintenance and cure, the admiralty jurisdiction over the suit depends not on the place where the injury is inflicted but on the nature of the service and its relationship to the operation of the vessel plying in navigable waters."

318 U.S. at 42–43, 63 S.Ct. at 492, 87 L.Ed. at 602.

Although cast initially in terms of jurisdiction the "nature of the service and its relationship to the operation of the vessel" criterion quite naturally became the test for determining liability as well.

In Braen v. Pfeifer Oil Transport, Company, 1959, 361 U.S. 129, 80 S.Ct. 347, 4 L.Ed.2d 191, 1960 A.M.C. 2, the Court on *O'Donnell, supra,* reiterated the "fact that the injury did not occur on the vessel is not controlling, * * *. A 'seaman' may often be sent off ship to perform duties of his employment." And then with obvious approval it pointed out that in "Marceau v. Great Lakes Transit Corp., (CA2 NY) 146 F.2d 416, a ship's cook was allowed to recover under the Jones Act when, pursuant to duty, he was returning to the ship and

2. "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply * * *."

3. Offshore Co. v. Robison, 5 Cir., 1959, 266 F.2d 769, 1959 A.M.C. 2049; Boatel, Inc. v. Delamore, 5 Cir., 1967, 379 F.2d 850, 1968 A.M.C. 2051.

4. Venice is about 20 miles above the mouth of the River and about 60 miles below Gretna which, on the west bank of the Mississippi is about due east of the business section of New Orleans.

was injured on the dock while approaching a ladder used as ingress to the vessel." 361 U.S. at 132, 80 S.Ct. at 249, 4 L.Ed.2d at 194.

Perhaps more important, speaking of *Aguilar*,[5] the *Braen* Court remarked it "was there recognized that a seaman is as much in the service of his ship when boarding it on first reporting for duty, quitting it on being discharged, or going to and from the ship while on shore leave, as he is while on board at high sea." *Id.* And then, tying this into *Warren*[6] the Court reached a climax of considerable proportions. The Court first pointed out that these "two cases were not brought under the Jones Act but involved maintenance and cure." But it then went on to equate "service of the ship" with the Jones Act statutory "course of employment." *Aguilar* and *Warren* "make clear that the scope of a seaman's employment or the activities which are related to the furtherance of the vessel are not measured by the standards applied to land-based employment relationships. They also supply relevant guides to the meaning of the term 'course of employment' under the Act since it is the equivalent of the 'service of the ship' formula used in maintenance and cure cases." 361 U.S. at 132–133, 80 S.Ct. at 250, 4 L.Ed.2d at 194–195.

On several occasions it has been held that an employee going either to or from work may be in the course of his employment. Marceau v. Great Lakes Transit Corp., supra, 1945 A.M.C. 223; Magnolia Towing Company v. Pace, 5 Cir., 1967, 378 F.2d 12, 1967 A.M.C. 2079. It is an easy problem—more accurately, not a problem at all—where the employee was performing work off the ship at the request or the order of the employer.[7] In that situation the seaman is plainly in the "course of his employment" if "at the time of the injury, * * * he was doing the work of his employer pursuant to his employer's orders." Believing "that every seam should be caulked, every sail reefed, every line secured and every anchor set to windward," United States v. Jones Financial Corp., 5 Cir., 1971, 437 F.2d 607, the Court concluded emphatically: "No more is required by the Jones Act."[8] 361 U.S. at 133, 80 S.Ct. at 250, 4 L.Ed.2d at 195.

But though the Jones Act requires "no more," can the Act be satisfied with less? Considering the broad policy behind the Act and the consistently liberal application of it, we readily answer in the affirmative.[9]

Of course, once we get away from the easy situation of activity done off the ship at the express direction of the employer, complications set in. Not the least of these is the fact that the litany "in the service of the ship" is of little more help than the reprise "in the course

---

5. Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107, 1943 A.M.C. 451.

6. Warren v. United States, 1951, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503, 1951 A.M.C. 416.

7. In *Magnolia Towing Company, supra,* the employee was ordered to go from Baton Rouge to Vicksburg even though he did provide his own transportation much of the way. Analogous is Hopson v. Texaco, Inc., 1966, 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740, 1966 A.M.C. 281, in which the employer had a statutory duty to transport the employee to the American Consul, and while doing so caused injury to the employee.

8. Indeed we remarked that "the only requirement [for a seaman to be in the course of his employment] is that the seaman be 'doing the work of his employer pursuant to his employer's orders.' Braen v. Pfeifer Oil Transportation Company, 1959, 361 U.S. 129, 133, 80 S.Ct. 247, 250, 4 L.Ed.2d 191." Crafton v. Tennessee Valley Sand & Gravel Co., 5 Cir., 1969, 408 F.2d 1096, 1097.

9. When Congress applied the "principles of recovery already established for railroad employees" to a seaman injured in the course of his employment, "Congress, in the absence of any indication of a different purpose, must be taken to have intended to make them applicable so far as the words and the Constitution permit, and to have given to them the full support of all the constitutional power it possessed." *O'Donnell,* 318 U.S. at 39, 63 S.Ct. at 490, 87 L.Ed. at 600.

of his employment." Each is essentially circular and question-begging—a statement of the problem, not the solution. At this point the law has to fall back on the traditional escape hatch—it all depends. The peculiar factors here assume decisive importance, some depending ultimately upon the factfinder's conclusions, others as a matter of law and most as a mixture of both.[10] Some will, some will not, be in the service of the ship.

Even the equated maintenance and cure "in the service of the ship" concept is a good deal less than automatic. As *Warren*, note 6, *supra*, affirms, maintenance and cure is recoverable for injuries received on shore leave in a house of recreation. Whether, or to what extent, there would be recovery for like injuries sustained hundreds of miles from the sea by a sailor on a month's annual vacation pursuant to a union bargaining agreement is something else. Each step, hour, or mile beyond that of an ocean-going seaman whose confined life makes recreation ashore desirable, presents a problem of assaying all factors to discern the affected interests of the employer.

Here there are several factors which demonstrate substantial interests which the employer has in this situation. There is the location and nature of the submersible platform-rig. Since water transportation is needed to and from pierhead and rig, none could possibly doubt that the water leg would be in the course of employment. See Spencer Kellogg & Sons v. Hicks, 1931, 285 U.S. 502, 52 S.Ct. 350, 76 L.Ed. 903, 905, 1932 A.M.C. 503; and Massey v. Williams-McWilliams, Inc., 5 Cir., 1969, 414 F.2d 675, 1969 A.M.C. 1641, cert. denied, 1970, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681. The platform had no quarters suitable for sleeping, eating or relaxing during off-duty shift hours. The men physically had to leave the rig daily. And for continuity in the work force, that meant that the men (or replacements) had to return to the rig daily. In all of this the employer had a most vital interest.

This interest is magnified by the geographical extent of the daily amphibious trips. From our supposedly detached position Judges are not so ignorant of the perils and problems of life in a complex and inflated world to be unaware of the economic factors in a daily trek of this kind. With the landleg amounting to 120 miles at least three days a week, any employer hoping for a stablized labor force would have to reckon with what this distance and the expense of travel would mean in recruiting and maintaining a steady, dependable work force.[11] Not out of heartfelt charity, but from the most worldly self-interest the employer supplies free transportation for he knows the employees know that such economic cost must be borne by someone, somehow. If the employee is to bear it, wages must be increased or job-attractiveness will be diminished. And to these employer interests may be added the convenience and reliability flowing from each tour's departing at predetermined locations and times.

10. These cases illustrate the nature and kind of cases in which "off-ship" injuries may give rise to recovery under maritime law, maintenance and cure, or Jones Act: Braen v. Pfeifer Oil Transportation Company, Inc., 1959, 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191, 1959 A.M.C. 2664; Central Gulf Steamship Corp. v. Sambula, 5 Cir., 1968, 405 F.2d 291, 1968 A.M.C. 2521; Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850, 1949 A.M.C. 613; Warren v. United States, 1951, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503, 1951 A.M.C. 416; German v. Carnegie-Illinois Steel Corp., 3 Cir., 1948, 169 F.2d 715, 1949 A.M.C. 285; Smith v. United States, 4 Cir., 1948, 167 F.2d 550, 1948 A.M.C. 761; The Arizona v. Anelich, 1936, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075, 1936 A.M.C. 627.

11. The Internal Revenue Service recognizes as presumptively reasonable the deduction of mileage allowances up to 15 cents per mile for work-related travel. Rev.Rul. 65–212, 1965–2 Cum.Bul. 84, Mod.Rev. Rul. 65–13, 1963–1 Cum.Bul. 69.

Both from the "nature of the service" as well as "its relationship to the operation" of the rig these direct employer interests in this arrangement make out an occurrence in the "service of the ship." [12]

Reversed.

12. These direct employer interests serve as additional grounds for distinguishing Sellers v. Dixilyn Corp., 5 Cir., 1970, 433 F.2d 446 so that it does not compel a result contrary to our decision.