Harold J. GUIDRY, Plaintiff-Appellee,

v.

SOUTH LOUISIANA CONTRACTORS, INC., a/k/a Soloco, Inc., and Liberty Mutual Insurance Co., Defendants-Appellants,

South Louisiana Contractors, Inc., a/k/a Soloco, Inc., Defendant-Appellee,

J. P. Messina Contractors and Hartford Insurance Co., Defendants-Appellants.

No. 77–3435.

United States Court of Appeals, Fifth Circuit.

March 24, 1980.

Rehearing and Rehearing En Banc Denied April 22, 1980.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, John G. Torian, II, John A. Jeansonne, Jr., Lafayette, La., for defendants-appellants.

George W. McHugh, Jr., St. Martinville, La., Domengeaux & Wright, Bob F. Wright, Anthony Moroux, Lafayette, La., for plaintiff-appellee.

Before GEWIN, RUBIN and SAM D. JOHNSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Familiar questions—whether an employee was a Jones Act seaman and, if so, which of two companies is liable for his injuries—arise in yet another of the protean factual situations presented by amphibious industrial operations. We conclude that the issues of negligence, comparative negligence and quantum of damages were properly put to the jury, and that the trial court correctly decided to direct a verdict on Jones Act status as to one of the putative employers and to dismiss the claims of indemnity and contribution between the defendants. However, the basic questions were whether or not at the time of his injury the plaintiff was a Jones Act seaman in the employment of one of the defendants and whether that defendant was liable for the negligence that caused the plaintiff's injury. Finding that these questions were not properly presented to the jury, we reverse the judgment on these issues only and remand for a new trial on them.

## I.

South Louisiana Contractors, Inc. (Soloco) owned a barge that carried a large dragline. Harold Guidry, a cook on the vessel, had in the past worked as an oiler on the dragline. J. P. Messina Contractors (Messina) had a contract to build a large pond. To do this job, Messina arranged to rent the dragline from Soloco for a period expected to be about two months. Soloco usually rented the barge complete with dragline and crew for $1800 a day. Soloco required that its personnel operate the dragline because it did not wish this expensive equipment to be in unfamiliar hands. Because Messina needed only the machine, Soloco agreed to move the dragline ashore and to supply it to Messina with operators, but without the barge and other crew members, for $1500 a day.

However, Messina's union contract required it to employ only union workers, and, of course, to pay union scale wages, an amount $2.50 to $3.00 per hour more than Soloco had been paying its dragline crew. Therefore, Soloco and Messina agreed that Messina would get union cards for the dragline personnel, put them on its payroll, pay them union scale wages, pay the state unemployment tax, pay the F.I.C.A. tax, provide state workmen's compensation insurance and pay for the fuel used by the dragline. In turn, Messina would deduct from the $1500 daily payment to Soloco that part of the amount it spent for wages that Soloco would have paid had the personnel been working for Soloco's usual pay rate, the insurance and employment taxes based on these rates and the cost of fuel.

Instead of remaining on the barge as cook, together with other workers not needed ashore, Guidry asked to be assigned to

dragline work as an oiler in order to get the higher wages. Guidry's request was honored on the basis of his seniority. While at work on the land job, he received his orders from the dragline operator, Larry Hebert, who had been the captain of the barge and who also was assigned from Soloco to do the Messina job. Soloco continued to pay Hebert captain's wages, to look to him to supervise the employees who remained on the barge, furnished him a truck and paid for his travel to and from the Messina job. It also continued to carry both Hebert and Guidry on its pension and hospitalization plans.

Messina's job superintendent directed all of the dragline operations. He gave orders to Hebert, who in turn directed the members of his crew. There was a dispute about the amount of control, if any, that Soloco retained over the crew while they were on the Messina project. There was evidence, though, that Messina could not discharge any member of the dragline crew without Soloco's permission.

Guidry was injured about two weeks after starting the job when he was walking out on the elevated boom of the dragline to adjust a cable and was thrown from it. The accident was allegedly caused by Hebert's negligence in permitting Guidry to walk on the boom while it was raised instead of lowering it.

Messina began to pay Guidry compensation under the Louisiana Workmen's Compensation Act. Guidry then sued both Soloco and Messina under the Jones Act, 46 U.S.C. § 688, contending that he was a seaman employed by Soloco but working under Messina's control and was entitled to recover from both for negligence.

Shortly before trial, Guidry settled his claims against Messina for $75,000 and the right to retain all compensation payments he had received. Guidry's Jones Act claim against Soloco went to trial. Messina claimed indemnity from Soloco for the amount paid Guidry and Soloco contended that, if Guidry recovered, it was entitled to indemnity from Messina or a credit on Guidry's judgment for the amount he had received in settlement. Even though Messina had compromised Guidry's claim, whether Messina had been Guidry's Jones Act employer was an issue in resolving the claims between Soloco and Messina. The trial judge held that the evidence of Jones Act status as to Messina was insufficient to warrant a jury verdict and that, as to Messina, Guidry was not a member of the crew of a vessel.

The remaining crucial issues, all controverted, were whether Guidry nevertheless was a member of a crew of a vessel when he was injured so as to give him Jones Act status as a seaman, whether Soloco was his Jones Act employer and who was vicariously liable for Hebert's negligence. These were submitted to the jury on the following interrogatories:

"Was plaintiff, Guidry, temporarily assigned by Soloco to perform work on land with the intention that Guidry would return to work on the dredge MR. BILL at the conclusion of the shoreside work?"

"Do you find that Soloco completely divested itself of control over plaintiff Guidry and Larry Hebert in connection with the work being performed by them on the dirt excavation job during the two–three weeks preceding the accident?"

"Do you find that Soloco was guilty of negligence which caused, even in the slightest, plaintiff's injuries?"

The jury answered each of these questions in the affirmative. It returned a verdict for Guidry in the amount of $150,000 but found him contributorily negligent to the extent of 9.6%. The district court denied Soloco's claim for a credit for the $75,000 settlement Guidry had received from Messina on the basis that Messina was shielded by the Louisiana Workmen's Compensation Act. The judge denied Messina's claim for indemnity because Soloco was not given credit for the settlement and because he found Messina also at fault, and he denied Soloco's claim for indemnity because of the compensation shield and Soloco's fault. Only Guidry was satisfied with the result; the other parties appealed.

## II.

At the outset, we dispose of contentions that only further muddy the waters. Soloco and Messina raise various cross-claims of contribution and indemnity, but these are hypothetical in view of the facts presented: if there was negligence (and the jury found there was), it was attributable to Hebert. If Hebert was at fault, either Messina or Soloco is liable. While there might be instances of joint control of one person by two employers giving rise to both becoming vicariously liable for his actions, *see* Restatement (Second) of Agency § 226, Comment a (1958), the facts present no such possibility here. The one employer who was vicariously liable for Hebert's actions has no implied right to claim indemnity from anyone other than Hebert, and there can be no contribution between the employers because there was no joint fault in the situation actually presented.

## III.

We turn now to the Jones Act claim.[1] Only seamen are entitled to the benefits of that law.[2] The traditional formulation of the requirements for identifying a seaman are: (1) he must have a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips.

*Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157, 1161 (5th Cir. 1972); *Offshore Co. v. Robison*, 266 F.2d 769, 775 (5th Cir. 1959). *See generally* G. Gilmore & C. Black, The Law of Admiralty § 6–21 (2nd ed. 1975).

A Jones Act claim also requires proof of an employment relationship either with the owner of the vessel or with some other employer who assigns the worker to a task creating a vessel connection, for "[b]y the express terms of the Jones Act an employer-employee relationship is essential to recovery." *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975). The employer need not be the owner or the operator of the vessel. *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir. 1972). Independent contractors may be liable under the Act, *Mahramas v. American Export Isbrandtsen Lines, Inc.*, 475 F.2d 165, 171 (2d Cir. 1973); *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir. 1972). And a third person who borrows a worker may become his employer if the borrowing employer assumes enough control over the worker. *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969). However, even if a seaman is deemed to be a borrowed servant of one employer, this does not automatically mean that he ceases to be his immediate employer's servant for Jones Act purposes. *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975). It may also be possible for a seaman to have more than one Jones Act employer. *Id.* at 225–26.

---

1. The Jones Act, 46 U.S.C. § 688, states:

 Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

2. The term "seaman" is contained in the original Jones Act enacted in 1920. In 1927 Congress enacted the Longshoremen's and Harborworkers' Compensation Act, 33 U.S.C. § 901 *et seq.*, which extended to all maritime workers except masters or "members of a crew of [a] vessel." The Supreme Court held that the effect of the Act was to restrict the benefits of the Jones Act to "members of a crew of [a] vessel." *Swanson v. Marra Bros., Inc.*, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946). The terms "seaman" and "member of a crew" are now used interchangeably.

 The Act, however, says nothing about the place where the injury occurs. Therefore, once it is established that a worker is a seaman, the Jones Act permits him to recover from his employer even for injuries received while he is on shore. *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943); *Vincent v. Harvey Well Service*, 441 F.2d 146 (5th Cir. 1971). *Cf. Aguilar v. Standard Oil Co.*, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943) (maintenance and cure available for seaman's injuries received while on shore leave). Neither does the statute require that his tasks at the time he is injured be related to service of the ship. *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422 (5th Cir. 1977), *rev'd on other grounds*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (citing *Braen v. Pfeifer Oil Transportation Co.*, 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959)); *Crafton v. Tennessee Valley Sand & Gravel Co.*, 408 F.2d 1096 (5th Cir.), *cert. denied*, 396 U.S. 827, 90 S.Ct. 73, 24 L.Ed.2d 78 (1969). Thus, just as the place of injury is not decisive, the situs of the employee's work is not determinative in a Jones Act case, and a seaman does not lose his status when he is temporarily assigned by his employer to duties off the vessel. *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422 (5th Cir. 1977), *rev'd on other grounds*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).

 These legal principles—that some injuries on shore are covered by the Jones Act and some assignments by the employer to shoreside work do not end the employee's status as a seaman—do not mean that the Jones Act extends to all injuries ashore. Neither the cases cited to us nor any we can discover suggest an indefinite reach for Jones Act status nor, if there is a limit, where it should be drawn. However, we start with the postulate that the Jones Act protects only seamen. This means that the employee must be a seaman at the time his claim arises; the fact that he was once a seaman and that either he or

his employer intend some day for him again to become one do not suffice to tint with blue water status all the events that happen in between, however remote in time and place from a vessel past or a vessel future.

In *Higginbotham*, we held that a seaman assigned to work on a fixed platform as a temporary replacement for a vacationing foreman remained a seaman while in a helicopter that crashed while ferrying workers from the platform to shore. The seaman in *Higginbotham* remained in the employment of the same employer throughout. It follows from this decision that a seaman's status does not cease at the moment he is required by his employer to work ashore. However, *Higginbotham* does not imply that a maritime worker assigned to work ashore for a very long period of time would continue indefinitely to be a seaman merely because it is contemplated that he will some day return to the vessel, nor that a seaman's status continues if he commences work for another employer.

 Turning first to the question of the effect of the assignment to work ashore, how long a seaman's status continues after a shoreside assignment is itself a fact question dependent on such factors as the duration of the assignment, its relationship to the employer's business, whether the employee was free to accept or reject it without endangering his employment status and any other factors relevant to the ultimate inquiry: at the moment of injury was the employee a seaman by conventional Jones Act criteria who happened not to be on navigable waters, or was he at that time no longer a seaman whatever his past relationship or his future prospects?

 Let us look at the other aspect of the problem, the question not present in *Higginbotham*, determining who was Guidry's employer while he was at work on the dragline. Guidry's injury occurred on land, and Messina had no connection with or control over the barge.[3] Guidry had never

---

3. *Cf. Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir. 1972). (Con-

tractor who hired oiler, who had been employed on barge, to work on barge's dragline on

been in Messina's employment as a seaman before the injury, was not in its employment as a seaman at the time of his injury and did not anticipate working for Messina as a seaman in the future. Even if Messina then had sole control over his activities and was paying his full wages, Guidry could not have been a Messina-employed seaman.

Because seaman status ordinarily is a jury question, a court may rarely conclude as a matter of law that an individual is or is not a seaman within the meaning of the Jones Act. *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157, 1162 (5th Cir. 1972). However, a court may hold that there is no reasonable evidentiary basis to support a jury finding that an injured person is a seaman and member of a crew of a vessel under the Jones Act. *Beard v. Shell Oil Co.*, 606 F.2d 515 (5th Cir. 1979). We conclude that there was no basis on which a jury could have found Guidry to be a seaman in Messina's employment, and that the trial judge was correct in directing a verdict in favor of Messina on this issue. And, just as Messina's relationship to Guidry would not have supported a Jones Act verdict in Guidry's favor, it was insufficient to make Messina a joint Jones Act employer with Soloco, thus serving as a predicate for contribution to Soloco.[4]

Let us turn then to the claim against Soloco. But for Guidry's prior relationship to a Soloco vessel and his expectation of returning to it, he could not have been a seaman when he was injured. These were necessary conditions for establishing Guidry's seaman's status but they were not alone sufficient. It was also necessary that he establish that Soloco continued to be his employer and that the nature of his assignment ashore did not sever his vessel connection and thus end his maritime status. The jury found that Soloco had temporarily as-

signed Guidry to perform work on the land with the intention that he return to work on the barge at the completion of the job. The court, however, did not define what was meant by the term "temporarily" and the jury did not decide the basic question whether Guidry was a seaman when he was injured.

A similar problem is raised by the oblique way in which the question of employment relationship was put: whether Soloco had relinquished all control over Guidry. This question assumed that Soloco's retention of *any* control over Guidry made Soloco his employer. Although *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 225 n.15 (5th Cir. 1975), did state that an employer must completely divest himself of control over an employee to avoid being considered his employer, this is not the sole criterion by which to judge Jones Act employment status. Spinks sued the company that had hired him and signed his checks, his payroll employer. This company in turn assigned him to do work with another firm, and the injury occurred while Spinks was working for the borrowing employer. We held that Spinks could continue to consider himself the employee of his payroll employer and could sue the payroll employer under the Jones Act, leaving that company and the borrowing company to sort out between them the ultimate liability.[5] In that context, we focus on whether the payroll employer has divested itself of all control over the employee. Unless this has happened, the employee is entitled to look no further than the signature on his check. He need not scout for further clues concerning who was his real employer, or seek to discover facts uniquely within the payroll employer's knowledge.

When, however, as in Guidry's case, the employee contends that one who did not

---

land job held to be Jones Act employer when employee injured while back on barge in course of his employment for land contractor.)

**4.** We also do not consider this a situation in which a seaman is employed jointly by one Jones Act employer and one non-Jones Act employer. Guidry was not performing work at

the time of the accident jointly for two employers; either Soloco or Messina was his employer.

**5.** Spinks elected to sue only the payroll employer. He might of course have joined the borrowing employer.

sign his checks was in fact his employer, the employee must prove the employment relationship. The possibility of some control over his actions, however small, does not suffice. Instead, Guidry must show, considering all the factors, such as the circumstances of his work for Messina and the nature of whatever continuing relationship he had with Soloco, that Soloco retained an employment relationship with him. *See Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978); *Spinks v. Chevron Oil Co.*, 507 F.2d 216 (5th Cir. 1975); *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969).

The final question is whether Soloco is vicariously liable for Hebert's negligence. The trial court presented this issue to the jury by asking whether Soloco had relinquished all control over Guidry *and* Hebert and whether Soloco had been negligent. These questions assumed that Soloco's relationship to Guidry under the Jones Act and Soloco's relationship to Hebert for determination of vicarious liability were governed by the same criteria.

 Hebert's status, however, should have been considered separately from Guidry's for two reasons. First, although the employment relationships were deceptively similar, Hebert's situation involved some different factors. Second, while the determination of vicarious liability is related to determining whether a defendant is an employer under the Jones Act, they are not assayed by identical standards. The Jones Act is remedial legislation and as such should be liberally construed in favor of injured seamen. *See Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975). However, vicarious liability is a separate question and does not necessarily turn solely on employment status. *See Gaudet v. Exxon Corp.*, 562 F.2d 351, 356 (5th Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978) (question of *respondeat*

*superior* not necessarily same as question of who is employer under Longshoremen's and Harbor Workers' Compensation Act). Of course, whether Soloco was Hebert's general employer is a factor in determining liability for his acts at a specific moment, but it is not decisive. A borrowing employer may become vicariously liable even without becoming an employer generally *if the borrowing employer assumes control over the acts of the employee and is directing him at the time when liability arises*. *See Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978); *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969); Restatement (Second) of Agency § 227 (1958). The important question is not whether Hebert remained the servant of Soloco generally, but whether, at the moment he was doing the work that led to Guidry's injury, he was acting in the business of and under the control of Soloco or Messina. *See Standard Oil v. Anderson*, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909); Restatement (Second) of Agency § 227, Comment a (1958).[6] It is for the jury to decide under all the facts whether Soloco or Messina is liable for Hebert's negligent act.

In sum, we REMAND for further proceedings consistent with this opinion and jury determination of the following: (1) whether Soloco was Guidry's employer at the time of his injury; (2) whether Guidry was at that time a Jones Act seaman; and (3) who is vicariously liable for Hebert's negligence. The other issues in the case, having been once resolved, need not be resubmitted. *See Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246 (5th Cir. 1979). Instead, the district court shall take these into account, as well as the determinations made on the remanded issues, and enter judgment accordingly.

In sum, we AFFIRM in part, REVERSE in part and REMAND for further proceedings consistent with this opinion.

---

**6.** The Restatement suggests that a "continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a serv-

ant to operate it, particularly if the instrumentality is of considerable value." Restatement (Second) of Agency § 227, Comment c (1958).