Albert C. WHITE

v.

**LOUISIANA MENHADEN CO., INC. and United States Fidelity and Guaranty Co.**

Civ. A. No. 80–927.

United States District Court, E. D. Louisiana.

Oct. 2, 1980.

Heisler & Wysocki, James A. Wysocki and Bonnie L. Zakotnik, New Orleans, La., for plaintiff.

Phelps, Dunbar, Marks, Claverie & Sims, Robert C. Clotworthy and James H. Roussel, New Orleans, La., for defendant.

ROBERT F. COLLINS, District Judge.

## REASONS

Plaintiff filed this action on March 14, 1980, seeking damages for injuries he allegedly sustained while working as a crew member of the M/V Sea Leader. Plaintiff alleged that defendant Louisiana Menhaden Company (Menhaden) owned, operated, and controlled the M/V Sea Leader. Plaintiff also alleged that his injuries were proximately caused by the negligence of defendant Menhaden and/or the unseaworthiness of the M/V Sea Leader. Plaintiff also appended to his petition a claim for maintenance and cure. Menhaden timely filed its answer. On June 12, 1980, in response to plaintiff's interrogatories, Menhaden set forth facts which give rise to the present motion for summary judgment. See record, document 15. Defendant Menhaden asserted that it did not own, operate, or control the M/V Sea Leader; that the M/V Sea Leader was not a vessel in navigation because the fishing season was over at the time plaintiff allegedly was injured; and, that plaintiff was a shore side worker at the time he was allegedly injured.

The material facts in this matter are undisputed. Although plaintiff's complaint alleged that plaintiff was a crew member of the M/V Sea Leader, in his deposition plaintiff stated that he was employed as a chief engineer aboard the M/V Sea Ranger during the 1977 fishing season, from March 1977 through October 1977. Plaintiff's dep. pp. 20–21. Plaintiff stated in his deposition, see pp. 20–21, that defendant Menhaden paid his salary during the fishing season. Defendant's exhibits show, however, that plaintiff's salary during the fishing season was instead paid by Mayport Fisheries Company (Mayport). See exhibit D. The exhibits filed by defendant conclusively prove that the owner and operator of the M/V Sea Ranger was Mayport. See defendants' exhibits A, D, E. These exhibits also conclusively demonstrate that defendant Menhaden owns none of the vessels made the subject matter of this litigation. Instead defendant Menhaden's business during the fishing season is the operation of a fish reduction plant, where fish are processed after they are caught. During the off season defendant Menhaden hires personnel to perform maintenance and repair work in its plant and on various vessels owned and operated by other corporate entities. The facts further show that Menhaden and Mayport share common directors and officers. See defendants' exhibit C. Nevertheless, defendants have proven that Menhaden and Mayport have complied with Louisiana law and are, therefore, two separate and distinct corporations. Plaintiff has set forth no facts which justify a piercing of the corporate veil, such that Mayport's ownership of the M/V Sea Ranger should be attributed to defendant Menhaden.

The undisputed material facts further demonstrate that plaintiff was employed as an engineer on board the M/V Sea Ranger from April 18, 1977 through October 12, 1977. Plaintiff's dep. at pp. 20–21; defendants' exhibit D. During plaintiff's employment as a seaman, his employer was Mayport. After the end of the fishing season, plaintiff began performing maintenance

work on board vessels docked at Menhaden's harbor facilities. Plaintiff's dep. at pp. 22, 26; defendants' exhibit E. On February 1, 1978, plaintiff was pushing an electric welder on the dock. Plaintiff's dep. p. 28. At the same time, another person on the dock lost control of a cart he was pushing, containing an acetylene torch. Plaintiff's dep. p. 42. The cart struck plaintiff who fell, and plaintiff was then run over by the cart. Plaintiff's dep. p. 44. After plaintiff recovered from his alleged injuries, some time in March 1978, he went back to work on the M/V Sea Ranger as chief engineer. Plaintiff's dep. pp. 56, 59–60. Thus, reviewing the undisputed material facts, the Court finds that from March 1977 through October 1977, plaintiff served as a seaman aboard the M/V Sea Ranger, a vessel owned by Mayport. From October 1977 through March 1978, plaintiff was employed by defendant Menhaden as a shore side worker performing repair and maintenance tasks on the vessels tied up at the Menhaden docks. During this period of land side repair work, plaintiff sustained the alleged injuries which gave rise to this litigation. Finally, some time in March 1978, plaintiff went back to work aboard the M/V Sea Ranger as a chief engineer.

Normally, the issue of Jones Act seaman status presents questions of fact which must be resolved by a jury. However, in some cases a court may grant summary judgment denying plaintiff seaman status if the court is convinced that "the only rational inference to be drawn from the evidence is that the claimant was not a seaman." *Owens v. Diamond M. Drilling Co.*, 487 F.2d 74, 76 (5th Cir. 1973). *Accord: Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir. 1980); *Beard v. Shell Oil Co.*, 606 F.2d 515 (5th Cir. 1979); *Fazio v. Lykes Bros. S. S. Co., Inc.*, 567 F.2d 301 (5th Cir. 1978). In this case the Court holds that plaintiff does not satisfy the test enunciated in *Offshore Company v. Robison*, 266 F.2d 769, 779 (5th Cir. 1959), because, at the time of the alleged injury, plaintiff lacked a permanent connection with a vessel in navigation. At the time of the alleged injury, plaintiff was a shore side worker and had

been employed as a shore side worker for three to four months.

Plaintiff, seeking to maintain seaman's status, argues that plaintiff can have more than one Jones Act employer and that Jones Act status is not jeopardized when a seaman is temporarily assigned to shore side work. The Court acknowledges that "[b]y the express terms of the Jones Act an employer–employee relationship is essential to recovery. The employer need not be the owner or operator of the vessel. ... The Jones Act incorporates standards established by the FELA. Under the FELA an employee may have more than one employer. It would seem reasonable therefore that a seaman may have more than one Jones Act employer." *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224–25 (5th Cir. 1975) (citations and footnotes omitted). However, assuming arguendo that defendant Menhaden was the Jones Act employer of plaintiff, it is clear that plaintiff was assigned to shore side duties for a three to four month period, at the time of plaintiff's alleged accident. To circumvent this fact, plaintiff relies on *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422 (5th Cir. 1977), *reversed on other grounds* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (*Higginbotham*) and *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447 (5th Cir. 1980) (*Guidry*). In both of these cases the Fifth Circuit recognized that a seaman could retain his Jones Act status "despite intermittent temporary assignments" to shore side duties. *Higginbotham*, 545 F.2d at 433. In *Guidry*, the Fifth Circuit explored the parameters set forth in *Higginbotham*. In *Guidry*, plaintiff seaman was assigned to a land side job. After two weeks, plaintiff was injured while performing his land side functions. In determining whether plaintiff was a seaman, the Fifth Circuit first commented upon the previous *Higginbotham* decision:

In *Higginbotham*, we held that a seaman assigned to work on a fixed platform as a temporary replacement for a vacationing foreman remained a seaman while in a helicopter that crashed while ferrying

workers from the platform to shore. The seaman in *Higginbotham* remained in the employment of the same employer throughout. It follows from this decision that a seaman's status does not cease at the moment he is required by his employer to work ashore. However, *Higginbotham does not imply that a maritime worker assigned to work ashore for a very long period of time would continue indefinitely to be a seaman merely because it is contemplated that he will some day return to the vessel*, nor that a seaman's status continues if he commences work for another employer. *Guidry*, 614 F.2d at 453 (emphasis added).

The Fifth Circuit then went on and held that resolution of the effect of a prolonged shore assignment on the issue of seaman's status is itself a question of fact:

> Turning first to the question of the effect of the assignment to work ashore, how long a seaman's status continues after a shoreside assignment is itself a fact question dependent on such factors as the duration of the assignment, its relationship to the employer's business, whether the employee was free to accept or reject it without endangering his employment status and any other factors relevant to the ultimate inquiry: at the moment of injury was the employee a seaman by conventional Jones Act criteria who happened not to be on navigable waters, or was he at that time no longer a seaman whatever his past relationship or his future prospects? *Guidry*, 614 F.2d at 453.

Based upon the undisputed material facts, all of the factors suggested by the *Guidry* opinion must be resolved against plaintiff. The duration of plaintiff's landside work was three to four months and would have been six months if plaintiff had not been injured, allegedly on February 1, 1978. Additionally, the cases plaintiff relies on are factually inapposite to the instant case. Both *Higginbotham* and *Guidry* deal with factual settings wherein plaintiff's Jones Act employer assigns plaintiff temporarily to a shore side work task. In the instant case defendant Menhaden employed plaintiff after the fishing season ended in Octo-

ber 1977 until the fishing season recommenced in March 1978. Thus, the same employer was not moving plaintiff from a traditional seaman's job to a temporary land side task, as in *Higginbotham* and *Guidry*. Instead, plaintiff changed employers, from Mayport to Menhaden, and changed job responsibilities and duties. The job duties he assumed as an employee of defendant Menhaden are typical of the duties performed by a longshoreman or harbor worker, who is engaged in ship repair work. The Court therefore holds that at the time of plaintiff's alleged accident, plaintiff was not a seaman.

Accordingly, the Court will and hereby does GRANT defendant's motion for summary judgment on the grounds that plaintiff is not a Jones Act seaman.