591 So.2d 1371 (1991)
Amy LEE, Individually and as Administratrix of the Estate of Ricky Lee, Deceased, and James Rickey Lee, Jr., a Minor, by his Parent and Natural Tutrix, Amy Lee
v.
MISSISSIPPI RIVER GRAIN ELEVATOR, INC., BARGE DIVISION, and/or Ferruzzi U.S.A., Inc.
No. 91-CA-0254.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1991.
*1372 Dennis F. Nalick, Donald J. Gisevius, Kenner, for plaintiffs.
Wilton E. Bland, III, C. William Emory, Hebert, Mouledoux & Bland, New Orleans, for defendants.
Before BARRY, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiffs, Amy Lee and her minor son, appeal the trial court's judgment granting defendants' motion for summary judgment in this wrongful death cause of action and dismissing plaintiffs' claim alleging negligence, under the Jones Act, 46 U.S.C. Section 688 and unseaworthiness under the General Maritime Law.
Ricky Lee was employed as a relief mate on the pushboat M/V Mr. Paul. On August 20, 1986, the M/V Mr. Paul docked at the Waterway Marine Terminal in Memphis, Tennessee. At approximately 8:15 p.m. on August 20, 1986, Lee disembarked the M/V Mr. Paul on his regular crew change. Lee lived in Searcy, Arkansas, and it is presumed that when he left the vessel, it was his intention to drive to his home. On August 21, 1986, at approximately 2:10 a.m., Lee was fatally injured in an automobile accident.
Lee's wife filed suit on her own behalf and on behalf of her minor child against Lee's employer, Mississippi River Grain Elevator, Inc. and/or Ferruzzi U.S.A., Inc. After discovery was conducted, defendants filed their Motion for Summary Judgment and Memorandum, urging the trial court that Lee was not in the course of his employment at the time of the accident and, therefore, plaintiffs' claim must be dismissed.
After considering the Motion, Memorandum and Arguments of counsel, the trial court granted defendants' Motion for Summary Judgment, thereby dismissing plaintiffs' claim with prejudice.
On appeal, plaintiffs argue that the trial court erred in granting defendants' Motion for Summary Judgment. Plaintiffs claim that to impose liability on a shipowner under the Jones Act, 46 U.S.C. Section 688, it is necessary only for the seaman to prove that the negligent act was a cause of his injury or death. Plaintiff bears the burden of proving proximate cause, but that burden is "very light, even featherweight." Davis v. Hill Engineering, Inc., 549 F.2d 314 at 331 (5th Cir.1977), rehearing denied 554 F.2d 1065.
The negligent act that plaintiffs allege occurred is that Mr. Lee was required to work as the only mate on the vessel for approximately 30 hours, although the normal complement of crew was to have two mates. Consequently he was exhausted when driving home which was a contributing *1373 factor to the accident. Plaintiffs argue that the standard to be applied, as articulated in Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. id. at 506, 77 S.Ct. at 448.
Furthermore, plaintiffs contend that a shipowner's liability for failure to furnish an unseaworthy vessel is a species of liability without fault and is not limited by the concepts of negligence. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) rehearing denied 328 U.S. 878, 66 S.Ct. 1116, 90 L.Ed. 1646. Plaintiffs argue that to be inadequately or improperly manned is a classic case of an unseaworthy vessel.
Plaintiffs maintain that the "submission of Jones Act claims to a jury requires a very low evidentiary threshold; even marginal claims are properly left for jury determination." They argue it was error for the trial court to grant summary judgment based on the allegations made.
Defendants argue that summary judgment was properly granted in this case. The Jones Act states:
Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all Statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury, the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and, in such action, all Statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.
Jones Act, 46 U.S.C. Section 688 (Emphasis added).
Defendants contend that they moved for summary judgment on the issue of whether Lee was in the course of his employment at the time of his injury. They argue that the trial court was correct in granting their motion and dismissing plaintiffs' claim because Lee was not in the course of his employment at the time he was injured and cite Braen v. Pfeifer Oil Transportation Company, 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959).
In Braen, supra, the Supreme Court stated that the "in the service of the ship test" used to determine entitlement to maintenance and cure is equivalent to the Jones Act term "course of employment". In Vincent v. Harvey Well Service, 441 F.2d 146 (5th Cir.1971), the Fifth Circuit recognized that the Supreme Court's guidelines were of little help when faced with a seaman who was injured off the vessel. The courts have employed two factors when discerning whether a seaman is "in the course of employment" when injured: (1) the degree of control the employer-vessel owner had over the seaman at the time of injury; and (2) whether the seaman, at the time of injury, was on personal business or on a mission for the benefit of his employer or attending to the business of his employer. Each factor and the case law that employed it is discussed separately.

DEGREE OF CONTROL
The lead case in this area is Daughdrill v. Diamond M. Drilling Company, 447 F.2d 781 (5th Cir.1971), cert. denied, 405 U.S. 997, 92 S.Ct. 1261, 31 L.Ed.2d 466 (1972). It is analogous to the instant case in that Daughdrill was killed in an automobile accident returning to work after being off for five days. The court found that at the time of the accident Daughdrill's employer had no control over his activities, *1374 thus he was not in the course of his employment under the Jones Act.
In finding that Daughdrill was not in the course of his employment when the accident occurred, the court relied heavily on Sellers v. Dixilyn Corporation, 433 F.2d 446 (5th Cir.1970) cert. denied 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 332 (1971). In Sellers, the plaintiff was injured in an automobile accident while travelling from work to his home. The Sellers court noted that to be in the service of the ship, the seaman must show that he was on authorized shore leave and answerable to the call of duty. Sellers at p. 447. In holding that Sellers was not on authorized shore leave, the court stated:
Sellers could not be said to be on authorized shore leave at the time of the accident. In fact, his "leave" or time off bore little resemblance to the shore leave of the traditional blue water seaman. The shore leave status found by the Supreme Court to exist in Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943), was held to arise from the demands placed upon this more customary type of maritime employee. This was a man who, as a necessary incident of irregular shipboard employment, was authorized to go ashore from time to time and place to place for diversion and relief from the routine of the ship, since he was not replaced while he was ashore, he remained at all times subject to his shipping articles and recallable at the will of his master.
433 F.2d at p. 448.
The court went on to note:
Sellers' employment was arranged into definite, equal periods on shore and on the rig. He was subjected to no foreign or irregular accomodations. Such a worker was to a large extent able to maintain the home life of ordinary shore dwellers. A separate crewman regularly replaced him and recall was not contemplated under any ordinary circumstances.
433 F.2d at p. 448.
In holding that Sellers was not subject to the call of duty, the court focused on the fact that Sellers was under no obligation to return to work if requested.
Although (the superintendent) might request a man such as Sellers to come back to work in the case of an emergency, whether he did return was purely discretionary on the man's part ... Sellers himself considered that he was free to pursue a second vocation or any avocation he desired. It is apparent from the facts adduced in this case that when Sellers was injured he was not serving any direct or indirect interest of his employer.
433 F.2d at p. 448.
Like Sellers, Lee worked a regular schedule; 30 days on and 30 days off. During the 30-day period that he was off work, he received no pay from his employers. His employer did not provide Lee with transportation to and from his home. When Lee made crew change at 8:15 P.M., he was replaced by another mate and Lee's 30-day hitch ended. Defendants urge that an off-duty Jones Act seaman driving home in his vehicle and receiving no compensation or reimbursement is not in the course of his employment.

MISSION OF THE VESSEL OR PERSONAL BUSINESS
Price v. Colony Insurance, 520 So.2d 964 (La.App. 4th Cir.) writ denied 522 So.2d 561 (La.1987) is an illustration of a line of cases which focus on whether the employee was attending to the business of his employer, rather than on a personal mission. Price involved a seaman on 24-hour duty to his vessel who, while driving his own vehicle, rear-ended another vehicle, injuring its occupant. The seaman visited with friends, shot a couple of games of pool and drank some beers. The court found that these are not the activities of one furthering the business of his employer and that the seaman was on a personal mission and not attending to the business of his employer. The court concluded that Price was not acting within the scope of his employment. *1375 Defendants argue that the same is true for Lee.
Defendants explain that Lee's accident occurred at 2:10 A.M. on August 21, 1986, approximately six hours after Lee left the M/V Mr. Paul. Lee's home is approximately 110 miles from the Waterway Marine. It would take Lee, at most, four hours to drive home. Lee's accident occurred approximately six hours after he left the Waterway Marine. By post-accident laboratory testing, it was determined that at the time of the accident, Lee's blood alcohol level was .07 percent. Clearly, Lee did not drive directly home from work. Instead, he engaged in activities that apparently included indulging in alcoholic beverages. There is nothing to indicate he was motivated by an intent, desire or obligation to benefit his employer.
Plaintiffs cite Broussard v. Marine Transport Lines, Inc., 369 F.Supp. 103 (D.C.Tex.1974); Nowery v. Smith, 69 F.Supp. 755 (D.C.Pa.1946) and Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447 (5th Cir.1980) as precedents to this case. Defendants argue that plaintiff's reliance on Broussard, supra and Nowery, supra is misplaced. Broussard and Nowery involved "blue water" seamen who were injured while on authorized shore leave. "Blue water" seamen endure the hazards and unique life associated with extended voyages to foreign ports. In Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943), the Supreme Court, in recognizing the distinction between "blue water" seamen and inland commuter seamen, noted that, with respect to "blue water" seamen, shore leave, with its attendant relaxation, is a necessary and beneficial antidote for the confinement and rigid discipline to which the seamen are subjected aboard ship by reason of the unique nature of their employment. It is in the shipowner's best interest to ensure that the seamen shall enjoy these hours of relaxation. Lee was an inland commuter seaman. The Aguilar presumption does not apply to inland commuter seamen.
With respect to plaintiffs' reliance on Guidry, it is also distinguishable from the instant case. The court was addressing the status questionwas the plaintiff a seaman?as opposed to the course of employment issue.
Citing Asian International, Ltd. v. Merrill Lynch, Pierce, Etc., 435 So.2d 1058, 1063 (La.App. 1st Cir.1983), defendants argue that when some issues remain in dispute, but those issues are not material to the determination, they will not preclude summary judgment. Furthermore, mere allegations without substance will not preclude summary judgment. Metropolitan Bank of Jefferson v. Summers, 257 So.2d 179 (La.App. 4th Cir.1972) writ denied 261 La. 462, 259 So.2d 914 (1972). However, defendants rebut plaintiffs' argument that the Jones Act covers an injured seaman where the negligent act, not the injury, occurred while the seaman was in the course of employment. Defendants maintain that this is a novel interpretation of the Jones Act and is contrary to the jurisprudence. Braen, supra and Davis, supra.
Furthermore, the statement in Amy Lee's affidavit, whereby she states that Lee informed her that he was tired due to being overworked, is a self-serving, hearsay statement. As such, it is not subject to consideration when reviewing the appropriateness of the trial court's granting of defendants' Motion for Summary Judgment. Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547, 549 (5th Cir. 1987). Hearsay evidence in affidavits and depositions, as well as unsworn documents, are not appropriate for consideration in ruling on a summary judgment motion. La. C.C.P. article 967.
Also, defendants argue that Lee's accident was in no way attributable to defendants' alleged negligence. Defendants submit if Lee was as tired as is claimed, he would have headed straight home. Defendants argue that the depressant effects of alcohol, coupled with early morning driving, combined to form the sole cause of *1376 Lee's accident. The events that transpired on the M/V Mr. Paul are too attenuated and played no role in Lee's unfortunate accident.
We find that summary judgment was proper in this case. In order for plaintiffs to assert their claim, it must first be found that Lee was acting in the course of his employment at the time of his injury. He was no longer under his employer's control nor was he on a mission of the vessel. Therefore, defendants are entitled to judgment as a matter of law.
AFFIRMED.