JiSCHOTT, Chief Judge.
Plaintiff, a seaman, is seeking benefits for maintenance and cure and damages under the Jones Act against defendants, Penrod Drilling Corporation, General Atlantic Resources, Inc. and Universal Ogden Services. After leaving the vessel where he was employed and after being taken to the dock, he was walking on the highway toward home when an automobile struck him. The trial court granted defendants’ motion for summary judgment dismissing his case. The issue is whether under the undisputed facts of the case, he is entitled to recover as a matter of law. We affirm. ■
Universal Ogden Services employed plaintiff as an offshore catering steward aboard a drilling rig in the Gulf of Mexico. General Atlantic Resources hired Penrod to provide the rig and the personnel to work on it, and Penrod contracted with Universal to provide catering on the rig. On December 16, 1992, plaintiff was informed that his services were no longer needed aboard the vessel and a relief steward would replace him. He was also told that he would be transported back to shore by a crewboat to the Baroid Oil dock in Fouchon, Louisiana later that day. At 6:30 p.m. when the relief steward arrived plaintiff boarded the crewboat which reached the dock at 10:00 p.m., and plaintiff disem *132 barked. Because he neither hadjjnor arranged for transportation from the dock to his home, and no telephone was available for his use at the dock, plaintiff proceeded to walk along dark, unlit LA Hwy 3090. While walking along the road two miles from the dock, he was struck by a car driven by Kenneth MePhail and severely injured.
Plaintiff filed suit against General Atlantic, Penrod and Universal seeking relief pursuant to the Jones Act and general maritime law. He later named MePhail as a defendant. General Atlantic, Penrod and Universal filed a motion for summary judgment, arguing plaintiff was not entitled to recover under either the Jones Act or general maritime law as he was not injured while in the service of the ship or during the course and scope of his employment or by any instrumentality under the vessel’s control. The trial court granted the defendants’ motion and dismissed plaintiffs claims against them.
Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. Id. A motion which shows that there is no genuine issue as to a material fact and that mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim. La. C.C.P. art. 966(C).
For a seaman to recover under the Jones Act he must have been acting within the course and scope of his employment at the time of his alleged injury. Lee v. Mississippi River Grain Elevator, Inc., Barge Div., 591 So.2d 1371 (La.App. 4 Cir.1991).
65 sAdditionally, in order for a seaman to be entitled to maintenance and cure, he must have been injured while in the service of the ship. Sellers v. Dixilyn Corporation, 433 F.2d 446 (5 Cir.1970), cert. denied 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 332 (1971). The “in the service of the ship test” used to determine entitlement to maintenance and cure is the same as “course of employment” as required for recovery under the Jones Act. Braen v. Pfeifer Oil Transportation Company, 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959); Lee, supra; Sellers, supra.
Courts consider two factors in determining whether a seaman was in the course and scope of his employment or in the service of the ship when injured upon land: (1) the degree of control the employer - vessel owner had over the seaman at the time of injury; and (2) whether the seaman, at the time of the injury, was on personal business or on a mission for the benefit of his employer or attending to the business of his employer. Lee, supra at 1373. In order for the degree of control to be sufficient for the employer to be held liable, the seaman must have (1) been on authorized shore leave at the time of his injury, and (2) been answerable to the call of duty at the time of his injury. Daughdrill v. Diamond M Drilling Company, 447 F.2d 781 (5 Cir.1971), cert. denied 405 U.S. 997, 92 S.Ct. 1261, 31 L.Ed.2d 466 (1972); Sellers, supra. If either element is missing, a seaman cannot, as a matter of law recover under either the Jones Act or the obligation to provide maintenance and cure. Id.
The cases cited by defendants in support of their motion for summary judgment are quite similar to the facts in the instant case. In Sellers, supra, the seaman was injured in a car accident while en route from the drilling rig on which he worked to his home. He had just completed a seven-day shift on the rig and was on his seven days off. His employer had transported him by boat from the rig to the dock, as was regularly done. Sellers was responsible for his own transportation from the dock to his home. The court found the seaman was not on |4authorized shore leave at the time of his injury considering the following circumstances: Sellers’ employment was arranged into definite, equal periods on shore and on the rig; he was *133 subjected to no foreign or irregular accommodations but rather was able to maintain a normal home life of ordinary shore dwellers; and, a separate crewman regularly replaced him and recall was not contemplated under any ordinary circumstances.
Likewise in Daughdrill, supra, the court held a seaman was not within the course of employment at the time of his death in an auto accident while en route from his home to the dock so that he could be transported from the dock to the rig. The court considered the fact that the employer provided transportation from the dock to the rig and back but did not furnish any land transportation to its employees, nor did it reimburse for such expenses.
In Lee, supra, this Court determined that the seaman was not in the course of his employment when he was killed in a car accident on his way home from work. The undisputed facts were that Lee worked a regular schedule, 30 days on and 30 days off. During his off period he received no pay from his employers. The employer did not provide Lee with transportation from the dock to his home. Also, when Lee’s 30-day on shift ended another crewman replaced him.
Defendants’ uncontradicted affidavits established that plaintiff was employed by Universal as a steward; while so employed he was assigned to offshore jobs in the Gulf of Mexico by a dispatcher on a call-out basis; he was an hourly paid employee; he was responsible for his own transportation to and from dock sites and he was not paid for the time he traveled to and from dock sites or financially reimbursed for his transportation; on December 16,1992, he was terminated by his supervisor on the rig and he was not subject to being called back to work aboard the rig; while assigned to the rig he worked 12 hour shifts and was normally assigned to work 14 days on and 7 days off; he would be replaced by a |5relief steward on his 7 days off and was replaced by another steward on the day he was dismissed from the rig. These facts establish that plaintiff was not in the course and scope of his employment or in the service of the vessel, as he was neither on authorized shore leave nor answerable to the call of duty when he was struck by MePhail’s automobile. Consequently, the defendants did not have the degree of control over plaintiff necessary for him to recover under the Jones Act or the obligation to maintenance and cure.
In this court, plaintiff argues that defendants, as Jones Act employers, had a duty to provide its crewmembers with a reasonably safe method of egress from the vessel upon discharge and they failed to do so. He relies on the facts that he did not have a telephone to use once he reached the dock and he was not allowed to return to the dock via helicopter earlier in the day when it was still daylight and there was a scheduled helicopter flight with an available seat. He states that defendants “had a duty to transport him from the rig to a point where it was reasonably safe to continue his journey home.” He concedes, however, that had he owned an automobile parked at the dock, or had a family member or friend been waiting at the dock to transport him home, his Jones Act employers would have met their burden of providing him with safe egress from the vessel by dropping him off at the dock.
Plaintiffs argument is without merit. The duty to provide a reasonably safe means of access and egress to and from the vessel arises from the doctrine of seaworthiness. See Florida Fuels, Inc. v. Citgo Petroleum Corp., 6 F.3d 330 (5 Cir.1993), rehearing denied 16 F.3d 1217, cert. denied, Authement v. Citgo Petroleum Corp., 511 U.S. 1019, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994). Defendants as Jones Act employers and/or vessel owners satisfied this duty when they transported the plaintiff safely to the dock via the boat. He was not injured |6while disembarking the rig, riding the crewboat en route to the dock or while disembarking the crewboat.
The eases relied on by the plaintiff in arguing that the duty to provide a safe method of egress extended well past the dock are inapposite. In Vincent v. Harvey Well Service, 441 F.2d 146 (5 Cir.1971), the plaintiff, a Jones Act seaman, was injured in a car accident while in transit to and from the dock. The court found that he was entitled to recover under the Jones Act because he was injured in an automobile furnished by- the employer to take its employees from the pier *134 head to a convenient metropolitan assembly point 50 miles away. The employer provided both the car and the driver. In addition, the platform where plaintiff worked had no living, sleeping or eating quarters and the workers had to leave the rig each day. The court, citing Sellers, concluded that where the employer’s involvement in the transportation of its employees ends at the dock so does its control, and from that point on the employee is no longer in the course and scope of employment and subject to protection under the Jones Act.
In Williamson v. Western Pacific Dredging Corp., 441 F.2d 65 (9 Cir.1971), cert. denied, Western-Pacific Dredging Corp. v. Williamson, 404 U.S. 851, 92 S.Ct. 90, 30 L.Ed.2d 91 (1971), the plaintiff was injured while in transit from the dock to his home. The court found that he was in the service of the ship and in the course of employment and under the control of the employer during transit because he was paid for his travelling time. The facts in both Vincent and Williamson are clearly distinguishable from the instant case and plaintiffs reliance on them is misplaced.
Plaintiff also argues that the vessel was unseaworthy because its crew was negligent. Specifically, he alleged that Joe Harris, Great Atlantic’s company man on the rig, would not allow him to use the rig telephone to arrange for transportation from the dock to his home. Pursuant to the jurisprudence, a vessel |7can only be deemed unseaworthy due to an incompetent crew if the plaintiff proves that the crewmembers’ negligent acts were so pervasive as to constitute a condition of the vessel. See Daughdrill v. Ocean Drilling & Exploration Co., 709 F.Supp. 710 (E.D.La.1989). Here, plaintiff makes a simple allegation that he was denied the use of the telephone but offers no evidence of negligence on the part of the vessel’s crew. Again, plaintiff has not shown that the vessel was unseaworthy.
Accordingly, the judgment appealed from is affirmed.

AFFIRMED.